### In re LAFAYETTE RADIO ELECTRONICS CORP., Debtor.

### Bankruptcy No. 880–00042.

United States Bankruptcy Court, E. D. New York.

Feb. 13, 1981.

See also, Bkrtcy., 8 B.R. 528; Bkrtcy., 7 B.R. 187; Bkrtcy., 7 B.R. 189.

Levin & Weintraub, New York City, for debtor.

Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for Haur Associates.

Gelberg & Kronovet, New York City, Special Counsel to debtor.

C. ALBERT PARENTE, Bankruptcy Judge.

Through a series of lease arrangements, on March 27, 1970, Lafayette Radio Electronics Corp. (hereinafter "debtor") became a subtenant of Haur Associates, Inc. (hereinafter "Haur"). Earl Equities, Inc., the prime lessee, defaulted in late 1975. Haur subsequently commenced a proceeding in the courts of the State of New York in 1977 against the debtor and the other parties to

the lease arrangements. Since that time, the state court action has not gone forward, even to the discovery stage.

On April 21, 1980, the debtor moved in this Court by order to show cause why an order should not be entered permitting debtor to assume a lease for Location No. 19 at 49–53 West 45th Street, New York, New York. Haur filed a timely affidavit in opposition to the debtor's order to show cause. Coordinate therewith Haur seeks an order determining the debtor's exercise of the option to renew the sublease as null and void.

In August, 1980 Haur obtained new counsel. On October 14, 1980, Haur moved for an order of abstention pursuant to 28 U.S.C. § 1471(d), consonant with the deflection of jurisdiction to the pending action in the state court. Debtor interposed a cross-motion in opposition to Haur's motion to abstain, and requested that costs and attorney's fees be awarded to the debtor.

The motion for an order to show cause and the affidavit in opposition to that motion have been held in abeyance pending resolution of the motion for an order of abstention and the cross-motion in opposition. There are then two issues before the Court at this time for resolution:

(1) Should the Court abstain from consideration of the debtor's motion for an order to show cause and deflect said motion to the courts of the State of New York?

(2) If the motion for an order of abstention is denied, should the Court award to the debtors the cost and attorney's fees incurred in defending said motion?

I.

■ Haur relies principally on *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940) to support its motion for abstention. In *Thompson*, the Supreme Court was required to interpret Illinois state property law in a proceeding under the Bankruptcy Act. Neither the statutes of Illinois nor its case law were applicable to the issue before the Supreme Court. However, there existed conflicting decisions relative to the Illinois common law by the Courts of Appeals for the Seventh and Eighth Circuits. Due to the divergence between the circuits, the Supreme Court deflected the case to the Illinois state courts for a determination of the law in question. In so deflecting, the Supreme Court stated:

A court of bankruptcy has an exclusive and nondelegable control over the administration of an estate in its possession. But the proper exercise of that control may, where the interests of the parties will best be served, lead the bankruptcy court to consent to submission to state courts of particular controversies involving unsettled questions of state property law and arising in the course of bankruptcy administration.

*Thompson*, 309 U.S. 478 at 483, 60 S.Ct. at 630.

Haur contends that the case at bar involved unsettled New York State property law, and accordingly, this Court must abstain and deflect the case to the state courts for resolution of the unsettled property issues.

*Thompson* must be considered in light of *Meredith v. City of Winter Haven*, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943). Again addressing the question of abstention, the Supreme Court held that:

... In the absence of some recognized public policy or defined principle guiding the exercise of the jurisdiction conferred, which would in exceptional cases warrant its non-exercise, it has from the first been deemed to be the duty of the federal courts, if their jurisdiction is properly invoked, to decide questions of state law whenever necessary to the rendition of a judgment.

*Meredith*, 320 U.S. 228 at 234, 64 S.Ct. 7 at 10, 88 L.Ed. 9.

In light of the above principle of law, it is clear that *Thompson*, 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876, is an exception to the general rule set down in *Meredith*, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9. This was recognized by the Supreme Court in 1949 when it stated:

The submission of special issues is a useful device in judicial administration in such circumstances as existed in the *Thompson v. Magnolia* ... case, but in the absence of special circumstances, *Meredith*, 320 U.S. at pages 236, 237 [64 S.Ct. at pages 11, 12] ... it is not to be used to impede the normal course of action where federal courts have been granted jurisdiction of the controversy. *Propper v. Clark*, 337 U.S. 472, 492, 69 S.Ct. 1333, 1344, 93 L.Ed. 1480 (1949); *accord, Colorado River Water Conservation District v. U. S.*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

Haur notes that jurisdiction in *Thompson* was based on the Bankruptcy Act, while jurisdiction in *Meredith* and its progeny was based on diversity. Haur contends that this distinction mandates that the bankruptcy courts should more readily abstain than the federal district courts. In support of this allegation, Haur relies upon *First National Bank of White River Jct., Vermont v. Reed*, 306 F.2d 481 (2nd Cir., 1962) where the Second Circuit Court of Appeals deflected a bankruptcy case to the state court. Distinguishing *Meredith*, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9, as a case predicated on diversity jurisdiction, the court in *First National Bank* declared, "... Here federal jurisdiction rests on bankruptcy, and the Bankruptcy Act contains several provisions looking toward state court determination of issues arising in the administration of bankrupt estates ..." 306 F.2d 481 at 488.

Haur's contention fails to take notice of the pervasive jurisdiction granted to the courts under the new Bankruptcy Code. Of particular import is 28 U.S.C. § 1471(c) which grants the bankruptcy courts the same jurisdictional powers as the federal district courts in all bankruptcy matters. *In the Matter of Epps*, 2 B.R. 737, 1 C.B.C. 368 (D.C., S.D.N.Y.1980); *In the Matter of Troy Indus. Catering Service*, 2 B.R. 521, 1 C.B.C. 321 (Bkrtcy., E.D.Mich.1980).

Despite this pervasive grant of jurisdiction to the bankruptcy courts under the Code, Haur alleges that the legislative history supports its contention that bankruptcy courts should still abstain when faced with issues requiring state court expertise, and cites the following portion of the House Report:

... Occasions arise when determination of an issue is best left to a court that decides similar issues regularly, especially if the issue is one that requires a particular expertise that the bankruptcy court does not have.

H.R.Rep.No.95–595, 95th Cong., 1st Sess. at p. 51 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6012.

It is crucial to a full understanding of the legislative history that one consider the rest of the paragraph which follows the section quoted by Haur:

... For example, in *Thompson v. Magnolia Petroleum*, the Supreme Court required a bankruptcy court to defer to a state court for determination of a particularly *unusual* question of state real property law. The power of abstention is necessary to the effective and meaningful exercise of the expanded jurisdiction granted by this bill.

H.R.Rep.No.95–595, *supra* at 51, U.S.Code Cong. & Admin.News 1978, p. 6012 (emphasis added).

The key word in this paragraph is "unusual." The legislative history does not propose that bankruptcy courts abstain whenever faced with a question of state property law. Abstention, as the Supreme Court expressed in *Meredith* and its progeny, should be exercised only when there are unusual or exceptional circumstances. *Meredith*, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9; *Propper*, 337 U.S. 472, 69 S.Ct. 1333, 93 L.Ed. 1480; *Colorado River*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483.

In the case at bar, Haur contends that the exceptional circumstance is the fact that there are neither previous cases nor applicable New York statutes which deal with the same factual situation. It is implicit that no case will ever be precisely on all fours with a previous fact situation. The mere presence of a unique question of

fact does not mandate abstention. Haur contends that there is a question of unsettled state law, not just fact. It is not necessary to decide if there is a question of fact or of law because, as the Supreme Court declared in *Meredith*, 320 U.S. 228 at 234–35, 64 S.Ct. 7 at 10–11, 88 L.Ed. 9, that the incident of state courts not having yet settled an issue of law is not by itself sufficiently exceptional to warrant abstention. There must be something more than just unsettled state law.

Haur's reliance on *Thompson*, 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876, is misplaced because in *Thompson*, although the property law was unsettled, there was also an actual conflict between the two Circuit Courts of Appeals as to the proper construction of Illinois law. In the case at bar, notwithstanding the fact that no other courts have dealt with the exact issue in question, there is only a potential for conflict between this Court and any New York State court facing the same issue in the future. The actual conflict between the courts served as the exceptional circumstance mandating abstention in *Thompson*, while the mere potential for conflict, if any does in fact exist, in the case at bar is not sufficiently exceptional. In the most recent restatement of the abstention doctrine, the Supreme Court stated that "... the mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of jurisdiction." *Colorado River*, 424 U.S. 800 at 816, 96 S.Ct. 1236 at 1245, 47 L.Ed.2d 483.

In further support of its contention that this Court should abstain because of the existence of unsettled state law, Haur relies on *In re Jewel Terrace*, 3 B.R. 36 (Bkrtcy.E.D.N.Y.1980), a case brought under the Bankruptcy Code. Haur interprets *Jewel Terrace* as standing for the proposition that unsettled state property law issues alone warrant abstention because property law is an area of state court expertise.

The issues here involved appear to arise out of contract, not property law. Consideration, rights of assignees, and third-party beneficiary rights are more properly contract than property law questions. However, the correct categorization of the issues raised need not be determined, as exceptional circumstances existed in *Jewel Terrace* beyond the question of unsettled state law.

The Court in *Jewel Terrace* based its decision to abstain not on unsettled state law, but on the facts that (1) the debtor was not acting in good faith, and (2) there existed a pending state court proceeding involving the same parties and issues. As the Court in *Jewel Terrace* stated: "... if the issue were to be presented *ab initio*, without the involvement of a court of original and competent jurisdiction, this court would have no hesitancy in presiding over and deciding the issue giving due consideration to the applicable state and municipal law." 3 B.R. 36 at 40.

■ Abstention is proper where, as in *Jewel Terrace*, there is already a pending state court action, as that action serves as the exceptional circumstance necessary to justify deflection. As the Supreme Court stated: "... It is the court's duty to [abstain] when a suit is pending in the state courts, where the state questions can be conveniently and authoritatively answered, at least where the parties to the federal court action are not strangers to the state action." *Meredith*, 320 U.S. 228 at 236, 64 S.Ct. 7 at 11, 88 L.Ed. 9. The rationale of this principle is that abstention avoids the potential conflict and further avoids duplication by the federal court, of the state court procedures. *In re Schroeter*, 52 F.Supp. 667 (E.D.N.Y.1943).

■ In the instant case, the pending state court action has been dormant for three years, not proceeding even to the stage of discovery. Therefore, none of the parties would be prejudiced, and no state court procedures would be duplicated by a denial of abstention. Since, as was discussed above, the mere potential for conflict is not sufficient to warrant abstention, the fact that there is a pending state court action does not mandate abstention in the case at bar.

■ Haur contends, finally, that if abstention is not mandated by law, it should still be exercised pursuant to the equitable powers of this Court. Haur claims that discovery would be more expeditious and more comprehensive under New York State law than under the Rules of Federal Civil Procedure, because at least one party to the state court action is not a party to the action in this Court.

It is clear that bankruptcy courts are inherently courts of equity. *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). However, the proposition that discovery would be better had under New York law than under federal law is not supported by case law, nor does Haur cite to any such support.

Federal Rule of Civil Procedure 26(b)(1) specifies that there is a broad scope of discovery: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ..." *See also*, Siegel, New York Practice, § 344 (1978). Further, Federal Rule of Civil Procedure 30 provides that "After commencement of an action, any party may take the testimony of any person, including a party, by deposition upon oral examination." Thus, there is no restriction on those witnesses to be deposed who are not parties to the action commenced in this Court.

In addition, it must be emphasized that summary proceedings, long a part of the equitable powers of the bankruptcy courts, serve to move actions forward more expeditiously in bankruptcy courts than is possible in a state court. *Katchen v. Landy*, 382 U.S. 323, 327, 86 S.Ct. 467, 471, 15 L.Ed.2d 391 (1966).

Therefore, Haur's application that abstention be had on equitable grounds must be denied.

## II.

Debtor's motion for costs and attorney's fees is predicated on the debtor's contention that Haur acted in bad faith in that Haur introduced the state property law issues in this proceeding and then four months later decided to move this Court to abstain from hearing these same issues.

■ It is clear that this Court, as a court of equity, has the power to assess costs and fees when a party acts in bad faith. *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); *Sprague v. Ticonic Bank*, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); *In re Beck Industries, Inc.*, 605 F.2d 624 (2nd Cir., 1979). The Supreme Court held in *Hall* that "... it is unquestioned that a federal court may award counsel fees to a successful party when his opponent has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Supra*, 412 U.S. at p. 5, 93 S.Ct. at p. 1946.

■ In the case at bar, the debtor has failed to establish the existence of bad faith by Haur. The testimony of the attorneys for both parties demonstrated conclusively that the preliminary delays in the state action were on consent of both parties, although since that time Haur has failed to diligently prosecute its case. If the debtor seeks to object to this failure to prosecute, the proper procedure is to commence dismissal proceedings under the applicable state law.

Haur did introduce state property law issues in its cross-motion. However, this cross-motion is by definition not the commencement of the action, but a response to the motion by the debtor. The fact that the cross-motion was "bulky" and "vigorously argued", as characterized by the debtor, serves as testimony to the thoroughness and hard work of the counsel for Haur and does not show bad faith.

The subsequent motion for abstention was commenced only after Haur obtained new counsel and its attorneys decided to proceed in the state court action rather than on the cross-motion. The debtor has not established that there was any bad faith by Haur in its decision to retain new counsel, nor that counsel's measured judgment in the pursuance of its client's rights was rooted in bad faith. In fact, the new counsel reviewed the action and came to a decision as to how to proceed in a relatively

short period of time. Debtor can hardly claim that there was an undue delay involved in the change of counsel. The only delay stems from the decision of Haur's new counsel to move to abstain, which falls within the purview of Haur's adversarial rights.

While the debtor predicates its argument for costs and attorney's fees on the delay caused by the motion to abstain, the debtor has not presented evidence suggesting a reason why Haur would want to delay this action unnecessarily. Haur has as much interest as the debtor in a speedy resolution of the question of whether the debtor has a valid claim of tenancy. A substantial delay could cause Haur as much difficulty in finding a new tenant should it succeed on the merits as it would cause the debtor if Haur were to prevail on the merits of this case.

The debtor has established neither the existence of bad faith nor any reason why Haur is acting in bad faith. Therefore, the cross-motion for costs and attorney's fees is denied.

Premised on the foregoing principles of law and equity, the Court denies both the motion for an order of abstention and the cross-motion for the assessment of costs and fees.

A hearing on the motion for an order to show cause why an order should not be entered permitting debtor to assume a lease for Location No. 19, and the affidavit in opposition, is hereby scheduled for March 11, 1981, at 10:30 a. m.