In Re Clifford G. REMINGTON, Bankrupt.

Thomas J. SUBRANNI, as Trustee of the Estate of Clifford G. Remington, Plaintiff,

v.

George C. T. REMINGTON, Clifford G. Remington, First Pennsylvania Bank, successor corporation of the Pennsylvania Company for Insurance and Provident National Bank, successor corporation of the Provident Life and Trust Company, Defendants.

No. B–78–02559.

United States Bankruptcy Court, D. New Jersey.

Oct. 8, 1981.

Thomas J. Subranni, Atlantic City, N. J., Trustee.

Montano, Summers, Mullen & Manuel by F. Michael Daily, Jr., Cherry Hill, N. J., for George C. T. Remington.

Archer, Greiner & Read by Nona L. Ostrove, Haddonfield, N. J., and Pepper, Hamilton & Scheetz, Philadelphia, Pa., for First Pennsylvania Bank.

Jacoby, Donner & Jacoby by F. Warren Jacoby, Philadelphia, Pa., for Provident Nat. Bank.

Valore, McAllister, Aron & Westmoreland by Mark G. Schwartz, Northfield, N. J., and James Conwell Welsh, Haverford, Pa., for bankrupt, Clifford G. Remington.

WILLIAM LIPKIN, Bankruptcy Judge.

On October 20, 1978 the above named bankrupt, Clifford G. Remington, filed a voluntary petition in bankruptcy in this district and Thomas J. Subranni was appointed trustee of his estate.

The facts leading up to the filing by the trustee of the complaint now in issue are of interest in arriving at a proper decision thereon.

The bankrupt has listed as a creditor his father, George C. T. Remington, in the sum of $437,204.07. The only other debts of the bankrupt are real estate taxes in the sum of $2,500.00 on property owned by him, located at 2733 Wesley Avenue, Ocean City, New Jersey, valued at $120,000.00, and taxes due the Internal Revenue Service in the sum of $9,344.17. His assets in addition to his real estate were set forth as a 1974 Ford valued at $1,000.00, plus cash and other personal property in the sum of $750.00. He claimed an exemption under the New Jersey exemption statutes then in effect in the sum of $1,000.00. Therefore, the recovery of any assets by the trustee would primarily be for the benefit of the bankrupt's father if the debt was a valid one, regardless of whether the father's claim was secured or unsecured.

However, disputes had existed between the bankrupt and his father as to the extent and validity of the claim by the father against the bankrupt.

Prior to the filing of the petition by the bankrupt in this court the father had obtained a judgment in the State Common Pleas Court in Pennsylvania against the bankrupt, which was upheld on appeal. In February, 1975, real estate of the bankrupt in Wynnewood, Pennsylvania, was sold and other liens thereon satisfied. The father gave the bankrupt approximately $30,000.00 credit on the judgment. In 1972 the father obtained a Writ of Attachment in the Cape May County Court upon property of the bankrupt in Ocean City, New Jersey and a judgment was entered on October 28, 1975 in the sum of $437,333.72.

Now as to the events in this court. On January 5, 1979 the trustee moved for a hearing before this court to compel lien claimants to prove the extent and validity of their liens on the real estate and for the sale of the real estate by him, he being vested with title under the provisions of Section 70(a) of the Bankruptcy Act. (11 U.S.C. § 110). The hearing and sale was to take place February 6, 1979. The next event however was the filing of a complaint by the father on January 17, 1979 wherein he set forth allegations of misconduct by the bankrupt and sought to have the discharge of the bankrupt from his debts be denied. The matter was set down for trial for February 6, 1979, but the complaint was amended on January 24, 1979 and trial fixed for February 20, 1979.

The father answered the trustee's complaint and, in effect, joined with the trustee seeking a sale of the son's real estate subject to his lien, alleging due thereon the sum of $496,374.55. The Internal Revenue Service of the United States Government filed an answer setting forth as due by the bankrupt the sum of $9,344.17.

The hearing on the sale was adjourned to April 2, 1979 after determination that the debt to the father was $485,093.71, and the tax lien was $9,344.17, plus taxes on the real estate.

However, on March 5, 1979 the bankrupt filed a Notice of Motion, also returnable April 2, 1979, wherein he sought a stay of the sale of the Ocean City property until the United States District Court for the Eastern District of Pennsylvania decided a suit instituted by him against his father wherein he sought a judgment in the sum of $810,000.00. Based upon such complaint, properly supported by affidavits, I stayed the sale scheduled for April 2, 1979. If the bankrupt prevailed in his action against his father it would possibly remove or at least reduce the father's claim. Equitable considerations therefore dictated that the sale should be stayed. Furthermore, the debtor filed an answer to the amended complaint of the father wherein, among other allegations, he denied the debt due his father and that his father had promised no action would be taken against the bankrupt on the notes and he denied the pertinent allegations of his father who sought to bar his discharge. A second amended complaint was filed by the father on April 12, 1979 seeking to bar the bankrupt's discharge.

Suffice it to say briefly, motions were made by the father to vacate the stay of the sale which was entered pending the outcome of the trial pending before the United States District Court. The stay of the sale was conditioned upon terms whereby the bankrupt would be obliged to pay taxes and insurance and that he would rent the house or pay rent therefor. That Order was entered on May 15, 1979 and the father took an appeal therefrom. The United States District Court, District of New Jersey, to which the appeal was taken, dismissed the appeal and affirmed the stay order on September 28, 1979.

On September 24, 1979 the District Court of the Eastern District of Pennsylvania decided the suit by the bankrupt against his father in favor of the father, whereupon again the father moved to vacate the stay, which came on for hearing on October 15, 1979. On that date the stay had to be further extended because an appeal was being taken, in Forma Pauperis, by the bankrupt to the Third Circuit Court of Appeals. On May 27, 1980 the Third Circuit Court of Appeals affirmed the judgment theretofore entered in favor of the father. On May 30, 1980 the father again moved to

vacate the stay of the sale, which was then put down for hearing for June 16, 1980. On that date it was agreed by all parties that the house be rented and the matter adjourned to July 7, 1980 on which date it was further agreed that the sale go forward on August 4, 1980 and that the bankrupt would not seek a Writ of Certiorari to the United States Supreme Court. On that date, August 4, 1980, the father bought the property for the sum of $500.00, subject to his lien, and real estate taxes and municipal liens for water and sewer. The debt to the father was set forth to be $485,093.71, and the value of the real estate estimated not more than $300,000.00. The Order Confirming the Sale was entered August 7, 1980, and the father would be entitled to an order by this court fixing the amount of the deficiency of the debt.[1]

On August 14, 1980 a Notice of Motion was filed by the father, returnable September 15, 1980, requiring the bankrupt to turn over to the father the pro-rata portion of the August rent and to charge the bankrupt with a nondischargeable obligation to the trustee for unreimbursed expenses incurred on the Ocean City property by reason of the adjourned sale, and also to compel the trustee to sell the bankrupt's 1974 Ford Torino automobile and to compel the trustee to institute an action against the daughter of the bankrupt for recovery, under Section 60 of the Bankruptcy Act, of a preferential transfer to the daughter of $800.00.

I passed upon the various demands of the father and as a result thereof the attorney for the bankrupt was to amend the bankrupt's schedules to include the car as part of his exemptions and even if the matter against the bankrupt's daughter was a preference, the benefit to the estate would be inconsequential after payment of administration costs to the trustee and to the court and the matter was adjourned to October 20, 1980 to resolve the matter with finality.

The events of this case are now nearing the matter now before the court.

At the hearing on September 15, 1980 a question was raised by the bankruptcy trustee and the father as to possible interest of the trustee in two trust estates in which the bankrupt was named as one of the cestui que trust, and whether the trustee should sell such interest.[2] It was also then represented that the bankrupt was the trustee of an estate in which his children had an interest and he possibly was claiming fees to which the bankruptcy trustee may be entitled.[3] On October 20, 1980 I resolved the unsettled matters from the adjourned motion and directed the trustee, Mr. Subranni, to file his complaint for the possible sale of the bankrupt's interest in the two estates created by his great grandfather, George C. Thomas.

That complaint was filed by the trustee against the bankrupt, his father, and the two banks who are the trustees of the two estates, namely, First Pennsylvania Bank, successor to the Pennsylvania Company of Insurance on Lives and Granting Annuities, and Provident National Bank, successor corporation to Provident Life and Trust Company.[4]

The two estates are each of considerable present size. The First Pennsylvania trust is approximately $1,200,000.00 and generates income annually of $65,000.00 to $75,000.00, and the Provident Trust is approximately $134,000.00. It generates income annually of about $6,900.00.

The essential terms of the two trusts both executed in Philadelphia, Pennsylvania and administered there are as follows:

The Trust indenture between the bankrupt's great grandfather, George C. Thomas, and the First Pennsylvania, executed

1. On April 15, 1981 an Order for a deficiency was entered against the bankrupt in favor of the father in the sum of $163,145.99 as an unsecured claim.

2. That issue is the gravamen of the matter now before this court.

3. That question was later resolved by Order permitting the Probate Court in Pennsylvania to resolve administration of that estate.

4. Hereafter designated as First Pennsylvania and Provident.

February 24, 1905, after setting forth the securities which make up the corpus of the estate reads:

Which said securities are to be held by the Company in trust for George C. Thomas, Junior, Sophie Thomas Remington and Leonard M. Thomas (hereinafter called the beneficiaries) and for the parties hereinafter named upon the following trusts and conditions:—

1. The income arising from the said trust estate shall during the lifetime of the Settlor be paid to him by the Company, to be by him distributed in each year in equal shares to the said three beneficiaries. . . .

2. In case any beneficiary shall survive the Settlor and, shall die leaving issue, the said trust shall continue as to the share of the said beneficiary for a period of twenty-one years after the death of the survivor of the said beneficiary and any child or children of the said beneficiary living at the Settlor's death. During the continuance of the said trust the income collected upon said share of the trust fund shall be paid to the said beneficiary, and after his or her death to the issue of said beneficiary. Income shall be paid to each and every benefi-ciary free and clear of his and her debts, contracts, engagements and alienations and of all liability therefor.[5] Upon the termination of said trust the said share of the trust estate shall be divided proportionately among the persons then entitled to receive the income. (underlining added)

3. In the event of the death of a beneficiary leaving issue surviving, which issue shall become extinct during the period fixed for the continuance of the trust, then upon such failure of issue, if the surviving wife or husband of the deceased beneficiary be then living, the Company shall hold the said share as is hereinafter provided; but if the wife or husband of said beneficiary be dead, then upon said extinction of issue the Company shall hold the said share upon the terms above specified but for the use of the surviving beneficiaries or their issue, per stirpes. If there be then no living beneficiary or living issue of a deceased beneficiary, the Company shall distribute the trust estate as follows:—(naming beneficiaries such as church entities).

Paragraph 4 treats with the event of the death of a beneficiary without issue then alive, but leaving a wife or husband, or extinction of issue of a deceased beneficiary during the lifetime of a surviving wife or husband.

Paragraph 4 was modified by the Settlor in 1906, which modification does not concern the issues in this litigation.

The Indenture of Trust between the Settlor, George C. Thomas, and Provident dated June 30, 1903 sets forth various securities transferred by the Settlor to Provident, " . . . which said securities are to be held by the said Trust Company in Trust for Mrs. Sophie Thomas Remington and the parties hereinafter named upon the following trusts and conditions."

Paragraph 2 directs the interest from the trust fund to be paid to the Settlor for the account of Sophie Thomas Remington and after his death, if Mrs. Remington is alive, then to be paid directly to her and Paragraph 3 provided that if Mrs. Remington died during the lifetime of the Settlor, then the Settlor could terminate the trust.

Paragraph 4 becomes the pertinent paragraph to the issue at hand wherein it provides:

4. In case the said Sophie Thomas Remington shall survive the said George C. Thomas, then said trust shall continue for a period of twenty-one years after the death of the survivor of said Sophie Thomas Remington and George C. Thomas Remington, her son, provided that issue of the said Sophie Thomas Remington shall so long survive, and during the continuance of said trust, after the death of the said Sophie Thomas Remington, the income collected upon said trust fund shall be paid to the child or children of

---

5. Rule in Shelleys case.

the said Sophie Thomas Remington living and the issue of any of her children deceased, such issue taking the parent's share. Upon the termination of said trust the fund shall be divided among the persons then entitled to receive such income as above stated. (see Note 5)

Paragraph 5 provided in the event Mrs. Remington died without surviving her child, children or issue of a deceased child or children, then how the estate was to be divided, naming various beneficiaries.

Paragraph 6, which by remote possibility may still become effective, provides:

In the event of the death of Sophia (sic) Thomas Remington leaving child, children or issue her surviving, but such issue becoming extinct during the period fixed for the continuance of this trust, then at the termination thereof said trust fund shall be divided one half thereof to the Domestic and Foreign Missionary Society of the Protestant Episcopal Church for the general use of said Society, and one half thereof to the Diocesan Board of Missions of the Protestant Episcopal Church for the Diocese of Pennsylvania.[6]

Sophie Thomas Remington survived the Settlor and has since died. She was survived by George C. Thomas Remington as her only issue. He has two children—his son, the bankrupt, Clifford, and his daughter, Sylvia C. Hott. The father is 83 years of age. The bankrupt is presently divorced from his wife and it has been stated to the court that the bankrupt's former wife is married to the bankrupt's father.

Therefore, the beneficiaries of the two trusts at the present time boil down to the father who has the right to the income for his life, and upon his death the income will go to the two children, the bankrupt and his sister, if they are alive for the period of time as required under Shelleys Rule, and then outright to them or their issue or to the other parties or entities named in the event of their demise. The bankrupt's sister, Sylvia C. Hott, is alive at the present time.

From the terms of the trust upon the death of the father the bankrupt and his sister would enjoy the income equally for a period of twenty one years provided they survived and upon termination of such period or sooner the principal would be paid in the proportion of income to such beneficiary.

Now I shall address myself as to what the trustee, Subranni, of the bankrupt's estate seeks in his complaint:—

(1) That defendants First Pennsylvania Bank and Provident National Bank submit their statements of account for the Trusts abovesaid, in which they are acting as Trustee, setting forth the interest of the Bankrupt therein, along with an accurate actuarial valuation of the Bankrupt's present interests therein as of the date of the filing of the Voluntary Petition, to wit: October 20, 1978.

(2) The interest of the Trustee, Complainant herein, in and to the income and corpus of the Trusts abovesaid be established and the same be surrendered unto the Trustee.

(3) The Trustee, Complainant herein, be permitted to sell any such interests in the said Trusts as is surrendered unto him in behalf of the bankrupt estate, free and clear of any other interests.

(4) For such other and further relief as is just.

As set forth above the father of the bankrupt is in effect the only creditor of the bankrupt for a rather considerable sum of money, over $163,000.00. The Settlor of the trust contemplated payment to the settlor's daughter, who was the mother of the bankrupt's father, of the income during her lifetime and then payment of the income thereafter to her issue during the lifetime of the issue. That has evolved down to the present payment of the income interest in the trusts to the father of the bankrupt, which as stated hereinabove is not a pid-

---

6. Paragraphs 5 and 7 were modified on January 19, 1906, which did not alter the pertinent terms of the trust now being considered by me.

dling sum. Should the son's interest be an asset of the bankruptcy estate under the provisions of Section 70 of the Bankruptcy Act [7] and thus to be liquidated by the trustee, the father would be the ultimate recipient and beneficiary of the proceeds of such sale after payment of administrative costs. It does not require much mental agility or reflection to conclude that the sale of the interest of the bankrupt, if saleable by the trustee, would be to the father because he would be able to bid to the extent of his debt against the bankrupt estate without being required to actually advance the price bid and subject himself only to administrative charges associated with such bid, which would be nominal. It is most unlikely for anyone else to bid for the son's possible future interest in his great grandfather's estate against the leverage in the hands of the father.

The father claims that the son's interest is now vested in the trustee, as does the trustee. However, the two bank trustees of the great grandfather's estate, as well as the bankrupt, dispute that position and the two banks have, in addition to disputing the rendition of an accounting, sought to have me abstain from deciding the matter and have the Probate Courts of Philadelphia, Pennsylvania, where the estates have been administered for years, resolve the rights of the parties under the trust instruments.

I am satisfied that the request for abstention by this court is merited and should be granted to the extent and for reasons hereinafter stated. Consistent therewith the demand for an accounting by the banks to the trustee of the bankrupt estate will abide ultimate disposition of the legal questions to be resolved by the State Court.

I have stated abstention is granted to the extent to be indicated. That abstention does not include the determination by this court of the right of the trustee, Subranni, to the debtor's share in the income of the First Pennsylvania trust during the life of the bankrupt should he survive his father. I do find that, and do not abstain from so finding, that the trust indenture of the bankrupt's great grandfather clearly created a spendthrift trust in the income of any beneficiary, and the trustee of the bankrupt's estate, therefore, cannot be vested with such income. The creditors of the bankrupt were not able to execute upon or realize the value thereof at the time of the filing of his Petition in Bankruptcy.

The State law of Pennsylvania, where the settlor resided and established the trusts in question, is controlling whether the creditors can reach the interest of the bankrupt which in turn determines whether the bankrupt's trustee is vested with such interest of the bankrupt. Pennsylvania does recognize that a spendthrift trust may validly be created to protect it from creditors and from alienating the income to be paid to a beneficiary during a period of years or for life. Likewise, the principal is similarly safeguarded during such period, it being obvious that otherwise the payment of income to the beneficiary cannot be assured. *Sproul-Bolton v. Sproul-Bolton*, 383 Pa. 85, 88, 117 A.2d 688 (1955); *Clark v. Clark*, 411 Pa. 251, 171 A.2d 417 (1963); *Riverside Trust Co. v. Twitchell*, 342 Pa. 558, 20 A.2d 768 (1941). The settlor did create a spendthrift trust as to the beneficiary in the First Pennsylvania trust and Section 70 of the Bankruptcy Act, cited

7. This proceeding commenced prior to October 1, 1979. Therefore, the provisions of the Bankruptcy Act are effective and not the Code. Section 70(a) of the Bankruptcy Act, (11 U.S.C. § 110(a)), which provides for title to property of the bankrupt in the trustee reads as follows:

"The trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this Act, except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located ... (3) powers which he might have exercised for his own benefit, but not those which he might have exercised solely for some other person; ... (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him or otherwise seized, impounded, or sequestered: ..."

above, thereby removes that interest from the trustee's vestiture of title. That the spendthrift trust provision is binding on the trustee, who stands in the shoes of the creditors is recognized in the case of *Danning, Trustee in Bankruptcy v. Lederer*, 232 F.2d 610 (7 Cir. 1956).[8]

Generally a Federal Court which has jurisdiction over the subject matter, as this court would have if the interest of the bankrupt in his great grandfather's estate is a vested one, which would in turn vest in the bankrupt's trustee, should not abstain from determining the matter. Abstention from the exercise of federal jurisdiction is the exception and not the rule. *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483, *rehearing denied; U.S. v. Akin*, two cases, 426 U.S. 912, 96 S.Ct. 2239, 48 L.Ed.2d 839 (1976). Furthermore, abstention should be exercised as a judge made doctrine that sanctions escape from an immediate decision only in narrowly limited special circumstances justifying the delay and expense in which the application of the doctrine inevitably gives rise. *Lake Carriers' Association v. MacMullan*, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972). The abstention by the federal court is not an abdication of federal jurisdiction but only the postponement of its exercise. *American Trial Lawyers Association v. N.J. Supreme Court*, 409 U.S. 467, 93 S.Ct. 627, 34 L.Ed.2d 651 (1973); *England v. Louisiana State Bd. of Med. Exam.*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1976), and the federal court abstains but retains jurisdiction while the state court proceedings, if initiated, are conducted and concluded, *Davis v. Board of Medical Examiners*, 497 F.Supp. 525, 534 (D.N.J.1980); *American Trial Lawyers Association v. N.J. Supreme Court*, supra. The doctrine of abstention is equitable in its origins, *Hostetter v. Idlewild Bon Voyage*

*Liquor Corp.*, 377 U.S. 324, 84 S.Ct. 1293, 12 L.Ed.2d 350, and "is an appeal to the exercise of the sound discretion, which guides the determination of courts of equity." *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 498, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941). Furthermore, abstention is decided on a case by case basis and is not an automatic rule when a federal court is faced with a doubtful issue of state law. *Baggett v. Bullitt*, 377 U.S. 360, 84 S.Ct. 1316, 1324, 12 L.Ed.2d 377. Abstention should be observed if an uncertain state law question is present, *Commonwealth of Pennsylvania v. Brown*, 260 F.Supp. 323 (E.D.Pa.1966); *McKnight v. Southeastern Pennsylvania Transp.*, 438 F.Supp. 813 (1977); *In re Project Oneco, Inc., Debtor*, 3 B.R. 284 (Bkrtcy.D.Col.1980); and when an unsettled question of State (real) property law arises, *Matter of Kaleidoscope, Inc.*, 3 B.R. 7 (Bkrtcy.D.Ga.1980); *Frederick L. v. Thomas*, 578 F.2d 513, 518 (3rd Cir. 1978). One of the leading cases, in addition to *Pullman*, supra, is *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 60 S.Ct. 628, 630, 84 L.Ed. 876 (1940), wherein the Supreme Court held,

A court of bankruptcy has an exclusive and nondelegable control over the administration of an estate in its possession. But the proper exercise of that control may, where the interests of the estate and the parties will best be served, lead the bankruptcy court to consent to submission to State courts of particular controversies involving unsettled questions of State property law and arising in the course of bankruptcy administration.

see also *D'Iorio v. County of Delaware*, 592 F.2d 681, 686 (3rd Cir. 1978), which recites that abstention requires that there must be uncertain issues of State law which is cited in *Evans v. Bridgeton Board of Education*, by J. Brotman (August 5, 1981, D.C.N.J.—not published).[9]

---

**8.** The limitation on the bankrupt's trustee interest exists even if the bankrupt beneficiary could have partially distributed or even terminated the trust.

**9.** Of interest is the provision in the presently effective Bankruptcy Code 28 U.S.C. §§ 1471

and 1478, which vests complete jurisdiction in the Bankruptcy Court of all persons and subject matter in a bankruptcy estate, but permits abstention by the court without right of appeal from such action.

504

The State Court of Pennsylvania will interpret, except as to the life income of the First Pennsylvania trust, which I have ruled upon, as to whether the two trusts provide for a present vesting of a future interest or only a contingent interest in the bankrupt. See cited cases: *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Gillespie v. Scott*, 103 Kan. 745, 176 P. 132, *cert. denied*, 249 U.S. 606, 39 S.Ct. 289, 63 L.Ed. 799, where the trustee was ordered into the State court for construction of a will to determine the estate, if any, taken thereunder by the bankrupt.

Now addressing myself to the reasons for abstention by this court in this particular case, I find that possibly the law of the State of Pennsylvania on construction of the two trusts is not so certain or finalized to permit me to hold firmly for the trustee or the bankrupt. The case of *In re Feeney's Estate*, 293 Pa. 273, 142 A. 284, 287 (1928) construed the terms of the will in issue to constitute a contingent interest,

> ... [W]here persons who are to take under a will must be living at a certain future day and those who answer to the description cannot be determined until that time arrives, the gift is contingent
> ....

Citing cases and Gray on Rule against Perpetuities (3d Ed.) 86. Stating further,

> Thus, under the terms of this will, the second life tenancies, or intermediate remainders, are contingent, for, until the death of the first life tenant, the identity of the members of that particular class of remaindermen, the son's children living at the son's death, cannot be ascertained; the two children now living may die before their father, and the latter may have other children born to him.

Thus, applying that case to the present case, it would appear the bankrupt, at best, would have only a contingent interest.

However, we then find *Riverside Trust Co. v. Twitchell*, 342 Pa. 558, 20 A.2d 768

(1941), which held a remainder interest following a life estate is not a contingent interest, even though the remainderman's right to possession is subject to the condition that he survive the life tenant. The Court, 20 A.2d page 771, quoting Tiffany on Real Property, 3d Ed., vol. 2 ¶ 323, p. 30, stated:

> ... [T]he distinction between a vested and a contingent remainder lies in the fact that a vested remainder is an estate while a contingent remainder is merely the possibility or prospect of an estate. Whether, in any particular case, a remainder is contingent or vested depends on the construction of the language used, as creating a mere possibility of an estate, or as creating an estate. The uncertainty which distinguishes a contingent remainder is not the uncertainty whether the remainderman will ever enjoy it, but the uncertainty whether there will be a right to such enjoyment ...

Of interest in *Twitchell*, page 771, is the Supreme Court's distinguishment of that case from *Feeney*, wherein the court said,

> ... [T]hat there the testator provided that "the income from said fund shall be paid ... to ... said children" *living at the death of the first live tenant*, (emphasis in decision), and clearly, therefore, the interest in the second life tenancies there were contingent, since the children could not be ascertained until the death of the first life tenant; while here, the second life tenant is ascertained, in being and ready to take upon the death of the first taker.

The trust instrument of the settlor in this case gave a vested interest in the bankrupt's father who was then alive. Can it be so interpreted to give the bankrupt, not then alive, a vested interest, or is it a contingent interest? Also, what about the interest of issue that could be born after the death of the bankrupt's father, to the bankrupt or to his sister, or even as to other issue born to the father at this late date? [10]

10. The contingency of issue being born to either child, namely, to the bankrupt and his sister and even to the bankrupt's father, until their death must be considered because it has not been otherwise medically determined that such issue is impossible. See also Genesis,

That is a matter for the Probate Court of Philadelphia to determine under these cases.

Then we read *In re Thompson's Estate*, 363 Pa. 85, 69 A.2d 112 (1949) which involved an inter vivos trust, similar to that created by the settlor herein. Therein the Supreme Court held the interest of the remainderman to be contingent. That construction could very well apply to the trusts created by the settlor herein.

Of interest also is the case of *Estate of Benson*, 447 Pa. 62, 285 A.2d 101, 105 (1972) wherein the court stated,

... We are all too aware that "... distinguishing between vested and contingent interests remains one of the most perplexing of all judicial tasks."

and further stated,

.... The issue is a prolific source of litigation, and it is well to remember that: (quoting from *Scott's Trust*, 322 Pa. 1, 16, 184 A. 245, 251 (1936)

"It was truly said more than two hundred years ago that 'no will has a brother', quoted in *Williamson's Est.*, 302 Pa. 462, 153 A. 765. This observation applies with equal force to deeds of trust. As Mr. Justice [later Chief Justice] Maxey said in the case referred to (page 466, 153 A. 765): '*This will must be construed by itself on its own unusual phrasing*. Each will is its own best interpreter, and a construction of one is no certain guide to the meaning of another.'" (underlining added).

Thus, abstention under the present posture of the decisions of the Courts of Pennsylvania is indicated to ascertain through the State Court of Pennsylvania if the bankrupt's interest in his great grandfather's trust estate was contingent or vested. I deem the Probate Court of Philadelphia to have superior expertise, after reviewing the terms of the trust instruments in their entirety and applying the actual facts of this case, to decide the issues.

The Probate Court of Philadelphia has been administering these trusts since 1903 and 1905 respectively. It has the parties before it. It can treat with the instruments as a whole whereby the settlor gave his daughter a life estate and also one to her son, the bankrupt's father, who is now 83 years of age, and he was alive at the time of the execution of the trusts and the settlor manifested an intent to also preserve to unnamed descendants income for their life, or a period of time, subject to Shelley's Rule or to the named entities, and how the principal would vest. The Probate Court, like this court, as a Court of Equity may so interpret the trusts that such latter beneficiaries are only contingent, but nevertheless are persons to be reckoned with, whereas the action of the father of the bankrupt, through the bankrupt's trustee, would be destroying the intent of the settlor in the trust as to who should be the beneficiaries under the trusts and would be able to wipe out his son's interest. The Probate Court of Philadelphia is the court to construe the trusts and determine the intent of the settlor.

Also of considerable consideration to me is the interest of the bankrupt's sister in the two trusts. She has not been made a party to these proceedings, but under the doctrine of unilateral estoppel as declared in the case of *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), it is possible she would be bound by my opinion as to her interest in the trusts. If I decided the issue before me as to contingent versus vested interest I could very well be subjecting her interest to execution and sale by her creditors though she has not been made a party to these proceedings. Here again I repeat, the entire trust estates are being administered before the Probate Court of Philadelphia and that Judge should be the one to decide the issue involving the bankrupt, and who of necessity would thereby, inferently at least, have jur-

Chapter 17:17 wherein Sarah had a child when ninety years of age of Abraham at 100 years of age. Furthermore, upon the remote possibility that issue becomes extinct then the spouse may

have an interest in the estate (see ¶ 3, First Pennsylvania Trust), which would redound to the present wife of George Remington, the bankrupt's father.

**506**

isdiction to determine the interest of the bankrupt's sister. That Judge sitting as a court of equity can pass upon the rights of all parties in arriving at an interpretation under Pennsylvania law of the two trust instruments executed by the Settlor, George C. Thomas, and whether the complaint filed by the trustee of the bankrupt estate is meritorious and created a vested interest in the two trusts, which if so construed would redound primarily to the bankrupt's father.

This court, therefore, will abstain from determination of such issues and direct the matter heard by the Probate Court of Philadelphia should the trustee of the bankrupt estate decide his position is sound. He shall file the complaint filed in this court, raising the within issue, with such Probate Court of Philadelphia County.

A copy of this Opinion and Order of Abstention and pleadings in this court shall be filed with the pleadings to be filed with the Probate Court of Philadelphia.

Let an Order be entered in accordance with the foregoing findings of fact and conclusions of law.