In re ALLEN CARPET CLEARANCE CENTER, EAST BRUNSWICK, INC., f/k/a The Carpet Super Stores, Inc., Debtor.

ALLEN CARPET CLEARANCE CENTER, EAST BRUNSWICK, INC., Plaintiff,

v.

MARO REALTY ASSOCIATES, Defendant.

Bankruptcy No. 883–30457–18.

Adv. No. 883–0169–18.

United States Bankruptcy Court, E.D. New York.

Aug. 8, 1983.

Levin & Weintraub & Crames, New York City, for debtor.

Herrick & Feinstein, Gen. Counsel, New York City, for Allen Carpet.

Cole, Schotz, Bernstein, Meisel & Forman, P.C., Rochelle Park, N.J., for Maro Realty.

## DECISION

C. ALBERT PARENTE, Bankruptcy Judge.

Maro Realty Associates (hereinafter "Maro"), landlord of the above-captioned debtor, moves for dismissal of the debtor's bankruptcy petition, or in the alternative for the court's abstention from exercising jurisdiction over the adversary proceeding pending between the parties, together with relief from the automatic stay of 11 U.S.C. § 362. Maro alleges that the debtor's Chapter 11 petition was filed in bad faith in that the sole purpose for filing was to avoid having a certain landlord-tenant action litigated in a New Jersey state court forum. In ancillary context, Maro asserts that the pending adversary proceeding deals exclusively with New Jersey landlord/tenant law and should therefore be litigated in the courts of New Jersey.

The debtor, Allen Carpet Clearance Center, East Brunswick, Inc. (hereinafter "ACEB"), a New Jersey corporation, is a wholly owned subsidiary of Allen Carpet Shops, Inc. (hereinafter "ACS"). Both ACS and ACEB are Chapter 11 debtors in this court, having respectively filed their petitions on February 19, 1981 and March 8, 1983. Neither ACS nor ACEB are presently operating as going concerns, but rather they derive revenues solely from subleasing their respective premises. ACS has proposed a plan of reorganization which is to be funded in part by the net proceeds that ACEB expects to derive from its lease with Maro.

By lease dated July 18, 1979, Maro leased to ACEB certain commercial premises located at 575 Route S–18, East Brunswick, New Jersey. The initial term of the lease was from July 18, 1979 to April 30, 1983. Pursuant to paragraph 4 of the lease, ACEB was given an option to extend the term pursuant to the following conditions:

4. *Option to Extend.* A. Lessee, at its option, shall be entitled to two (2) successive extensions of this Lease as follows:

(i) From May 1, 1983, to April 30, 1988;

(ii) From May 1, 1988, to April 30, 1993, provided written notice of the exercise of any such option is given to Lessor by certified mail, return receipt requested, not more than twelve (12) months nor less than nine (9) months prior to the expiration of the then current term and subject to all terms and conditions of this Lease. It shall be a condition of the exercise of all of the foregoing options that both at the time of the exercise of said option and the commencement of the extension period, Lessee shall not be in default thereunder.

In January 1983, Maro, alleging that ACEB failed to properly exercise its option to extend the lease, brought suit in the Superior Court of New Jersey, Middlesex County, for a declaratory judgment that ACEB must quit and surrender the subject premises upon expiration of the original lease term. In response thereto, and in lieu of serving answering papers, ACEB filed its Chapter 11 petition in this court on March 8, 1983, thereby staying the action pursuant to 11 U.S.C. § 362.

On March 14, 1983, ACEB commenced an adversary proceeding in this court for a declaratory judgment that ACEB had duly exercised the renewal option. Thereafter, by notice of motion dated April 20, 1983, the debtor moved to assume the lease and sublease in question. On April 12, 1983, Maro interposed an answer and counterclaim in the adversary proceeding praying for either: (1) the court's abstention from the adversary proceeding or (2) a declaratory judgment that the lease would expire on April 30, 1983. Simultaneously therewith, Maro filed a notice of motion seeking: (1) to dismiss ACEB's bankruptcy petition on the ground that it was filed in bad faith, or (2) in the alternative, the court's abstention from the adversary proceeding together with relief from the automatic stay.

In its moving papers, Maro contends that ACEB filed its Chapter 11 petition solely for the purpose of forum shopping in connection with the lease litigation. It argues that ACEB's absence of assets and creditors demonstrates that reorganization was not the debtor's aim in filing the petition. Maro further asserts that the lease litigation should be tried in the courts of New Jersey since the action was first commenced there and involves unsettled matters of New Jersey landlord/tenant law.

The debtor maintains that its petition was not filed in bad faith. In support of its position, the debtor argues that the lease in question constitutes a vital part of ACS's plan of reorganization. In the words of debtor's counsel, "the feasibility of ACS's Plan of Reorganization is premised upon a sublease income stream from eleven (11) properties, one of which is the East Brunswick Premises. Indeed, the NBS Sublease generates approximately fifteen (15%) percent of the income of ACS's sublease program." Debtor's Memorandum of Law 4/22/83, at 15. Given the importance of the lease, the debtor asserts that it was necessary to file a bankruptcy petition in order to expedite the lease litigation. The debtor claims that were the matter to be tied up in the state courts for any appreciable length of time, this could undermine the ACS plan of reorganization. Thus, while acknowledging the applicability of New Jersey law, the debtor nevertheless contends that this court is the proper forum for the litigation.

The debtor concedes that it failed to serve written notice upon Maro of its election to extend the lease term as required by the provisions of paragraph 4 of the lease. However, it is the debtor's position that Maro was put on notice of the debtor's election to extend the lease by virtue of: (1) certain discussions held between the parties, and (2) a letter sent to Maro on or about May 5, 1982, informing Maro of the debtor's intent to sublet the premises to N.B.S. Carpet Distributors, Inc. The sublease, which runs through April 29, 1983, was ultimately approved by this court after notice and hearing without objection by Maro. Since the proceeding for approval of the sublease was brought within the notice period fixed by paragraph 4 of the lease,

the primary issues to be resolved in the lease litigation are: (1) whether serving notice of the sublease would under New Jersey law be deemed tantamount to serving notice of the debtor's election to extend the term of the prime lease, and (2) if not, whether the debtor should be relieved in equity of its failure to provide Maro with written notice of its election.

DISCUSSION

■■■ The debtor does not dispute that this court's inherent power of abstention continues to exist notwithstanding the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), which held 28 U.S.C. § 1471 to be unconstitutional. *But see, In re Sapolin Paints, Inc.,* 30 B.R. 792 (Bkrtcy.E.D.N.Y. June 29, 1983) (Goetz, J.). The doctrine of abstention is equitable in its origin, and is an appeal to the exercise of the sound discretion by which courts of equity are guided. *In re Remington,* 14 B.R. 496, 503 (Bkrtcy.D.N.J.1981). Among the traditional grounds for invoking the abstention doctrine are considerations of comity and the desire to facilitate amiable state-federal relations. *In re Eastern Consolidated Utilities, Inc.,* 17 B.R. 809, 811 (Bkrtcy.E.D.Pa. 1982). In addition, bankruptcy courts will in appropriate cases consent to submission to state courts of particular controversies involving unsettled questions of state law which arise in the course of bankruptcy administration. *In re Remington, supra* at 503 (citing *Thompson v. Magnolia Petroleum Co.,* 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940)); *see In re Lafayette Radio Electronics Corp.,* 8 B.R. 973 (Bkrtcy.E.D.N.Y. 1981).

Both parties cite *Marjer v. Layfmen,* 140 N.J.Eq. 68, 53 A.2d 187 (Ch.Div.1947) as the leading New Jersey case on the exercise of a lease renewal option. The court in *Marjer* found the law of New Jersey to be as follows:

> The lessor's covenant or agreement to renew extends a privilege to the tenant, but is, nevertheless, only an executory contract, and, until the tenant has exercised his privilege by way of some affirmative act, the lessor cannot be held for the

additional term. When notice by a lessee of his exercise of a right or privilege to renew given by the terms of a lease, is required, the notice must indicate his unconditional and unqualified determination to exercise his option; and if the provision of the lease requiring notice specifies the kind of notice to be given, the terms of the lease must be complied with by the tenant in order to bind the landlord, and the notice, must, ordinarily, be given in the manner provided.

\* \* \* \* \* \*

> There is unanimity in the decisions that equity will relieve against the consequences of a failure to give a notice at the time or in the form and manner required as a condition precedent to the renewal of the lease, when such failure results from accident, fraud, surprise, or mistake, and there are other special circumstances which have been held to warrant a court of equity in granting relief against the consequences of the lessee's failure to notify the lessor within the stipulated time or in the specific form or manner prescribed.

*Id.* at 71–72, 53 A.2d 187. *Accord, Sosanie v. Pernetti Holding Corp.,* 115 N.J.Super. 409, 279 A.2d 904 (Ch.Div.1971).

■■■ While it is clear from the above language that the courts of New Jersey will in compelling circumstances relieve a tenant of his failure to comply with the notice provisions of his lease, it is possible that the New Jersey courts might be less willing to relax the general rule of strict compliance where the tenant is a commercial enterprise. Rather than establish precedent for New Jersey, this court will abstain and permit Maro to pursue its state court action.

While it is possible that the lease litigation will be more protracted in the Superior Court of New Jersey than it would in this court, it is reasonable to assume that both parties will take advantage of whatever expediting mechanisms might be available in the state court system. Moreover, since ACEB and ACS are not operating entities and have no employees, the adverse conse-

quences resulting from delay should be minimal.

Maro's interest in the present proceeding extends no further than in having the lease litigation tried in a New Jersey forum. Since the debtor has never been in default of the lease, Maro is not a creditor of the bankruptcy estate. It would appear therefore that Maro has no legitimate interest in obtaining dismissal of the Chapter 11 proceeding. Thus, having already determined that the court will abstain from exercising jurisdiction over the pending adversary proceeding, there is no cause to address the remaining issue of whether the debtor's petition was filed in bad faith.

Accordingly, Maro's motion is granted to the extent set forth herein. The debtor's motion to assume the lease and sublease shall be held in abeyance pending the outcome of the state court litigation.

Settle Order.