**In the Matter of DALLAS OIL & GAS, INC., Debtor.**

**A. M. MANCUSO, Receiver,**

v.

**CHRISTIE GAS TRANSMISSION CORP. and Dixie Natural Resources of Texas, Inc.**

**Bankruptcy No. BK 3–76–0132–F.**

United States Bankruptcy Court, N. D. Texas, Dallas Division.

Dec. 3, 1981.

Mark Berry, Christie, Berry & Dunbar, El Paso, Tex., for Christie Gas Transmission Corp. et al.

Robin E. Phelan, David W. Elrod, Dallas, Tex., for A. M. Mancuso, Receiver.

IN PROCEEDINGS FOR AN ARRANGE-
MENT UNDER CHAPTER XI

JOHN C. FORD, Bankruptcy Judge.

## OPINION AND MEMORANDUM OF LAW

Defendant's motion to dismiss Plaintiff's complaint for lack of jurisdiction brought the issues involved herein before the court for resolution. The Court, having considered the motion, briefs submitted by the parties, testimony and the pleadings on file, makes the following Findings of Fact and Conclusions of Law:

## BACKGROUND

On March 8, 1976, the Debtor filed a petition for an arrangement under Chapter XI of the Bankruptcy Act[1] in the United States District Court for the Northern District of Texas, Dallas Division. This Court then appointed A. M. Mancuso as Receiver of the Debtor on March 9, 1976. Prior to filing the petition, the Debtor was engaged in the business of drilling for and producing oil and gas from various properties. The Receiver is now operating the business and is to this day continuing to receive proceeds from oil and gas production.

This adversary proceeding[2] is just one in a multitude of proceedings in a complex case consuming much of the court's time. The familiarity of the Court with the complex history of this case is to be kept in mind when reading the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. On or about April 21, 1974, the Permian Corporation ("Permian") entered into a Gas Sales and Purchase Contract ("Contract") with Dallas Oil & Gas, Inc. ("Debtor"). Permian maintained a gas gathering pipeline system in the Mingus field ("Min-gus System") servicing the Debtor's wells located in the Mingus field.

2. By Contract of Sale dated December 1, 1976, Permian sold the Mingus System to W. E. Pope. An Order Authorizing Consent to Assignment was entered by this Court on January 7, 1977, and all of Permian's rights and obligations under the Contract were assigned to Pope.

3. By Contract of Sale dated December 17, 1976, Pope conveyed the Mingus System to Dixie Natural Resources of Texas, Inc. ("Dixie"). An Order Authorizing Consent to Assignment was entered by this Court on February 2, 1977, and all rights and obligations under the Contract were assigned to Dixie.

4. Kings Point Corporation ("Kings") acquired all right, title, interest, and obligations pertaining to the Mingus System from Dixie, pursuant to a non-judicial foreclosure on Dixie. (See Transcript, Recessed First Meeting, filed February 12, 1981, at page 12).

5. On April 3, 1979, Kings conveyed to Christie Gas Transmission Corporation ("Christie") the Mingus System and assigned all rights and obligations under the Contract with Debtor to Christie.

6. The Receiver instituted this Adversary Proceeding by filing a Complaint to Recover Information against Dixie and Christie on September 24, 1979, requesting Gas Measurement Charts. Information from the Gas Measurement Charts was necessary in order to determine amounts due to the Debtor.

7. In its Answer to Complaint to Recover Information, filed October 15, 1979, Dixie admitted all of Plaintiff's allegations contained in the complaint of September 24, 1979, but denied possession of the requested information.

---

1. The 1898 Bankruptcy Act has been repealed. See Title IV of the Bankruptcy Reform Act of 1978, Pub.L. 95–598, § 401. However, cases commenced under the 1898 Act continue to be "conducted and determined under such Act." Ibid. § 403(a). Throughout this opinion, references to the 1898 Act are in the past tense, reflecting the decline into obsolescence of the Act.

2. An adversary proceeding, in the Bankruptcy Court, is commenced by the filing of a complaint and may be instituted to recover money or property. Bankruptcy Rule 701 and 703.

8. In Christie Gas Transmission Corp.'s Answer to Complaint to Recover Information, filed October 15, 1979, Christie denied possession of the requested information. *No* objection to the jurisdiction of this Court was stated in Christie's answer.

9. Sometime subsequent to October 15, 1979, Dixie produced the requested Gas Measurement Charts. Utilizing the charts, an audit was performed in January 1980 by John P. Squires Co. of the February through July 1977 gas volumes from the Debtor's wells. The audit demonstrated an alleged discrepancy of 10,096 MCF of gas between the volumes as reflected in the statements provided by Dixie to the Debtor and the actual gas volumes contained in Dixie's Gas Measurements Charts for the same period. This alleged discrepancy may have resulted in a total underpayment to the Debtor by Dixie of $17,000.00.

10. Utilizing the information obtained from Dixie, the Receiver on August 14, 1980, filed a Complaint to Recover Natural Gas Underpayments naming Dixie and Christie as Defendants.

11. On September 12, 1980, Christie answered objecting to the summary jurisdiction of this Court and complaining of defective service of process. Christie moved to dismiss this proceeding for lack of jurisdiction.

12. The Receiver cured the defect in service of process by causing the issuance of a Summons and Notice of Pre-trial Conference on November 25, 1980.

13. On December 29, 1980, Christie filed another answer restating its objection to jurisdiction of this Court but omitting its complaint concerning defective service of process. On the same date Christie filed a brief on the jurisdiction question.

14. On January 21, 1981, a pre-trial conference and hearing was held wherein this Court denied Christie's Motion to Dismiss for Lack of Jurisdiction.

15. From the inception of this case, the Debtor's gas wells have been in the possession and control of the Receiver and this Court. These same gas wells are the subject matter of the contract between the Debtor and Christie.

16. It is undisputed that the $17,000.00 sued for in the Receiver's Complaint filed August 14, 1980, is in the possession of this Court.

17. On September 14, 1981, an Order was entered by this Court stating in part "that this Bankruptcy Court has jurisdiction over the matters herein and that the Motion to Dismiss of Defendant Christie Gas Transmission Corp. is hereby denied."

18. On September 24, 1981, Christie filed its Notice of Appeal to District Court appealing the Order of September 14, 1981.

### CONCLUSIONS OF LAW

It is undisputed that this Court has possession of the property in question. If not for the persistence of Defendant Christie, this opinion would be concluded at this point. However, in order to put the question to rest, a brief review of summary jurisdiction under the now repealed Bankruptcy Act ("Act") will be set forth.

Under the Act, the power of a bankruptcy court to act summarily regarding controversies over property in its actual or constructive possession, and proceedings arising in the course of an administration, was not in any way restricted by the terms of Section 23.[3] Collier on Bankruptcy, 14th ed. ¶ 23.03 at page 443.

---

3. Section 23. (11 U.S.C. § 46) reads:

"a. The United States district court shall have jurisdiction of all controversies at law and in equity, as distinguished from pleadings under this Act, between receivers and trustees as such and adverse claimants, concerning the property acquired or claimed by the receivers or trustees, in the same manner and to the same extent as though such proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants.

"b. Suits by the receiver and the trustee shall be brought or prosecuted only in the courts where the bankrupt might have brought or prosecuted them if proceedings under this Act had not been instituted, unless by consent of the defendant, except as provided in Sections 60, 67, and 70 of this Act."

■ Jurisdictional questions under the Act were divided into two broad categories: (1) those dealing with the bankruptcy court's power to adjudicate all matters relating to the administration of the bankrupt's estate and the property in the court's possession, and (2) the jurisdiction of federal district courts sitting either as district courts at law or in equity or as courts of bankruptcy over independent suits brought by the bankruptcy receiver or trustee against third persons concerning property *not* in the possession of the bankruptcy court.[4] Collier on Bankruptcy, 15th ed. ¶ 3.01 at page 3–22. The cases in the first category were classified as summary proceedings, those in the second as plenary suits. Thus a proceeding to determine the right to property in the possession of the bankruptcy court was "summary". The bankruptcy court had exclusive jurisdiction of summary proceedings. Collier, supra at 3–19; see also *Matter of Fontainebleau Hotel Corporation*, 508 F.2d 1056, 1058 (5th Cir. 1975); *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 481, 60 S.Ct. 628, 630, 84 L.Ed. 876 (1940) and *Matter of Land Investors, Inc.*, 544 F.2d 925, 929 (7th Cir. 1976). In the case at bar, since the property in question is undisputedly in the possession of this Court, there is summary jurisdiction to hear this controversy.

■ Assuming arguendo that the property is not in the possession of the Court, there still is jurisdiction by consent to these proceedings. Numerous cases have held that if the disputed property is in the possession of an adverse claimant who has more than a colorable claim to it, the adverse claimant has a right to a plenary hearing but, nonetheless, may consent to submit his claim to the summary jurisdiction of the bankruptcy court. See *Chandler v. Perry*, 74 F.2d 371, 372 (5th Cir. 1934); *Matter of Abraham*, 421 F.2d 226 (5th Cir. 1975); and cases cited in Collier on Bankruptcy, 14th ed. ¶ 23.08.

Christie did not object to the jurisdiction of this Court in its first answer filed October 15, 1979. Pursuant to Bankruptcy Rule 915(a)[5] and Section 2a(7)[6] of the Act, Christie's failure to make appropriate objection to the jurisdiction of the court at the very first opportunity[7] constitutes a consent sufficient under the statute to support jurisdiction of this Court over this controversy. See *In re Airmotive Suppliers, Inc.*, 519 F.2d 1102, 1104 (5th Cir. 1975).

Of course, in the case at bar, the Court is in possession of the property in question and has summary jurisdiction of this proceeding. The Order of this Court entered September 14, 1981, denying the Motion to Dismiss stands.

---

4. The distinction between plenary and summary jurisdiction caused many problems and led to the adoption of the expanded jurisdiction of the bankruptcy courts under the Code. See Collier on Bankruptcy, 15th ed. ¶ 3.01 for a complete review.

5. Rule 915(a) reads:
   "(a) Waiver of Objection to Jurisdiction. Except as provided in Rule 112 and subject to Rule 923, a party waives objection to jurisdiction of an adversary proceeding or a contested matter and thereby consents to such jurisdiction if he does not make objection by a timely motion or answer, whichever is first served."

6. Section 2a(7) (11 U.S.C. § 11) reads in pertinent part:
   "(W)here in a controversy arising in a proceeding under this Act an adverse party does not interpose objection to the summary jurisdiction of the court of bankruptcy, by answer or motion filed before the expiration of the time prescribed by law or rule of court or fixed or extended by order of court for the filing of an answer to the petition, motion or other pleading to which he is adverse, he shall be deemed to have consented to such jurisdiction."

7. It should be noted that § 2a(7) was amended in 1952 to add the wording cited in note 6, supra. Pub.L. 456 (S. 2234), 82d Cong., 2d Sess. (1952). The House Report on the bill explained that the amendment was necessary in order to reverse the effect of *Cline v. Kaplan*, 323 U.S. 97, 65 S.Ct. 155, 89 L.Ed. 97 (1944), wherein the Supreme Court held that a respondent is not to be deemed to have consented if he made formal objection to the summary jurisdiction at any time before entry of the final order in the proceeding. See *Airmotive*, supra, at 1104 for a complete discussion of the matter.