### THOMPSON, TRUSTEE, *v.* MAGNOLIA PETROLEUM CO. ET AL.

No. 481. Argued February 28, 1940.—Decided March 25, 1940.

*Mr. Thomas T. Railey* for petitioner.

*Messrs. Craig Van Meter* and *Thomas H. Cobbs,* with whom *Messrs. Fred H. Kelly, Wm. H. Armstrong,* and *Walace Hawkins* were on the brief, for respondents.

MR. JUSTICE BLACK delivered the opinion of the Court.

A rich oil field was discovered in Illinois in 1938. Thereupon, this dispute arose between a trustee of a railroad in reorganization under § 77 of the Bankruptcy Act (11 U. S. C. 205) and other claimants as to the legal right to drill for and capture fugitive oil under the railroad's right of way traversing the newly discovered field. The trustee asserts fee simple ownership of the right of way lands with consequent right to reduce the underlying oil to possession. Respondents deny the trustee's alleged title or that he has any interest in the land beyond a mere easement—a limited right to use the surface for railroad purposes only. They allege that ownership of the fee is in others, from whom they have obtained oil leases. This determinative question of fee simple ownership can be decided only by interpretation, under Illinois law, of instruments granting the railroad its right of way.

The questions here are whether the bankruptcy court has summary jurisdiction to adjudicate ownership of the right of way lands, and whether that court abused its discretion in ordering the fugitive oil captured and its proceeds impounded pending adjudication of the ownership.

Petitioner is trustee of the Missouri-Illinois Railroad Co., a subsidiary of the Missouri-Pacific Railroad Co., in process of reorganization in the same proceeding with the parent company in the United States District Court

480

for the Eastern District of Missouri. The trustee petitioned the bankruptcy court ". . . for determination of title and for advice and directions respecting certain proposed oil operations on right-of-way near Salem, Illinois." And his petition alleged that the right of way lands had been "fenced and used by Trustee and his predecessors in interest without interruption, and with actual visible and exclusive possession acquired under claim of title inconsistent with the claims of title of any other owner for at least twenty years prior to institution of these proceedings"; that by reason of this adverse possession and various conveyances and decrees of record, the trustee had title to the lands and a right to the oil thereunder; that numerous wells had been dug in close proximity to the right of way and without prompt action to remove the oil under the right of way it would be drained into wells on adjacent lands and its value forever lost to the stockholders and creditors of the railroad. The prayer sought notice to claimants of rights to the oil to appear and show cause why they should not be "estopped and enjoined from asserting any further title in and to the land . . . upon which said right-of-way is located or to the mineral, oil or gas deposits in and under . . . [the] right-of-way or extracted therefrom"; and that, pending "determination of adverse claims to title," the trustee be authorized to have wells drilled, oil captured and sold, and the proceeds, less cost of production, impounded and held for the account of the rightful owner as might be thereafter determined by the bankruptcy court.

Although they admitted that the railroad "had been in possession of the . . . premises" using them for right of way and tracks, respondents denied both that the trustee owned the fee and that the railroad had been, or that the trustee was, in adverse possession of the oil and other minerals under the right of way.

The bankruptcy court found that the trustee was in "actual possession of the property . . . ., under assertion

of claim to fee simple title thereto": that the court accordingly had jurisdiction; and that immediate action was necessary "to conserve the oil supply underlying the property for the benefit of the parties in interest as their rights, title, and interest thereto may hereafter be determined by this Court." The trustee was therefore directed to provide for wells, production and sale of oil, with the proceeds—less expenses—to be impounded pending adjudication of ownership.

Upon consideration of Illinois law, which admittedly must govern, the Court of Appeals reversed with instructions to dismiss the trustee's petition, concluding that, as interpreted under Illinois law, the instruments relied on by the trustee conveyed an easement only and that the trustee's possession of the right of way lands under an erroneous claim of fee simple ownership was not such possession of the oil and gas as to give the bankruptcy court summary jurisdiction to determine fee simple ownership.[1] Conveyances of rights of way in Illinois substantially similar to those here in dispute have been held by the Court of Appeals for the Seventh Circuit, in which Illinois is located, to convey a fee simple title under that state's law.[2] Because of this conflict and the importance of the question of the bankruptcy court's asserted summary jurisdiction, we granted certiorari.[3]

*First.* Bankruptcy courts have summary jurisdiction to adjudicate controversies relating to property over which they have actual or constructive possession. And the test of this jurisdiction is not title in but possession by the bankrupt at the time of the filing of the petition in bankruptcy.[4] Here, the trustee succeeded to the physical pos-

---

[1] 106 F. 2d 217.

[2] *Carter Oil Co.* v. *Welker,* 112 F. 2d 299.

[3] 308 U. S. 630.

[4] *Harris* v. *Avery Brundage Co.,* 305 U. S. 160, 162, 163 and notes 4, 5 and 6.

session, custody and control of the right of way lands which the railroad had enjoyed at the time of bankruptcy. In fact, however, no one had, when the petition was filed, physical possession of the fugitive oil apart from the lands under which it lay. The Supreme Court of Illinois has said, "The grant of oil and gas is a grant of such oil and gas as the grantee may find, and he is not vested with any estate in the oil or gas until it is actually found." [5] And this entire controversy can only be resolved by solution of the primary question of fee simple ownership. The parties agree that if ownership of the right of way lands is in the trustee he has the right to capture the underlying oil, and if not, that the trustee has no such right. Thus, the right to the disputed oil necessarily hinges upon where the ownership of the fee to these lands lies. And possession of those lands under claim of fee simple ownership by the railroad and later by the trustee was an adequate basis for the District Court's summary jurisdiction. As previously determined in litigation involving another aspect of this same reorganization, the jurisdiction thus acquired by the bankruptcy court "extends . . . to the adjudication of questions respecting the title." *Ex parte Baldwin*, 291 U. S. 610, 616.

*Second.* We are of opinion that it was not an abuse of discretion for the bankruptcy court to authorize the trustee to protect all interests—so far as it appeared possible to do so—by preserving the oil, from waste and depletion, through its extraction and sale with the net proceeds to be impounded until final determination of the controversy over title to the right of way lands.

The verified petition and supporting evidence offered a basis for the District Court's finding that such steps were necessary to protect the estate's possible interest in the oil under the right of way. No other method has been suggested whereby such protection against ir-

---

[5] *Poe* v. *Ulrey*, 233 Ill. 56, 62; 84 N. E. 46, 48.

reparable loss to the estate of the wandering and vagrant oil[6] could have been better afforded. The ". . . malleable processes of courts in bankruptcy give assurance of a remedy that can be moulded and adjusted to the needs of the occasion." *Steelman* v. *All Continent Co.*, 301 U. S. 278, 290.

*Third.* A court of bankruptcy has an exclusive and nondelegable control over the administration of an estate in its possession.[7] But the proper exercise of that control may, where the interests of the estate and the parties will best be served, lead the bankruptcy court to consent to submission to state courts of particular controversies involving unsettled questions of state property law and arising in the course of bankruptcy administration.[8] And, under the circumstances of this case, we conclude that it is desirable to have the litigation proceed in the state courts of Illinois.[9] An order to the trustee to proceed in the Illinois courts for a decision on the ownership of the fee to the right of way lands will be comparable to one in which the bankruptcy court, preserving the status quo the while, orders a trustee to determine in a plenary state court suit the legal right to property alleged by the trustee to have been fraudulently transferred by the bankrupt.[10] Decision with which the

---

[6] See *Poe* v. *Ulrey, supra,* 62.

[7] *Isaacs* v. *Hobbs Tie & T. Co.,* 282 U. S. 734.

[8] *Id.,* 739; see, *In re Schulte United, Inc.,* 49 F. 2d 264; see, e. g., *Foust* v. *Munson Lines,* 299 U. S. 77 (bankruptcy court's denial of permission for suit in admiralty against debtor in 77B, held abuse of discretion); *Texas* v. *Donoghue,* 302 U. S. 284 (refusal of permission for a State to try in a state court its claim—based on alleged forfeiture—to oil held by trustee in 77B, abuse of discretion). 5 Remington on Bankruptcy, 4th Ed., §§ 2045, 2370.

[9] Cf. *Ex parte Baldwin, supra,* 619.

[10] Cf. *Steelman* v. *All Continent Co.,* 301 U. S. 278. See *Scott* v. *Gillespie,* 103 Kan. 745; 176 P. 132, cert. den. 249 U. S. 606 (trustee ordered into state court for construction of will to determine estate, if any, taken thereunder by bankrupt).

federal court of bankruptcy is here faced calls for interpretation of instruments of conveyance in accordance with Illinois law. Neither statutes nor decisions of Illinois have been pointed to which are clearly applicable. And the difficulties of determining just what should be the decision under the law of that State are persuasively indicated by the different results reached by the two Circuit Courts of Appeal that have attempted the determination. Unless the matter is referred to the state courts, upon subsequent decision by the Supreme Court of Illinois it may appear that rights in local property of parties to this proceeding have—by the accident of federal jurisdiction—been determined contrary to the law of the State, which in such matters is supreme.[11]

The judgment of the Circuit Court of Appeals is reversed and that of the District Court is affirmed except insofar as it provides for adjudication of the disputed ownership in the bankruptcy court. The cause is remanded to the District Court with instructions to modify its order so as to provide appropriate submission of the question of fee simple ownership of the right of way to the Illinois state courts.

*Reversed.*

MR. JUSTICE McREYNOLDS took no part in the decision of this case.

---

[11] Cf. *Erie R. Co.* v. *Tompkins,* 304 U. S. 64.