**In re UNIT PARTS COMPANY, Debtor.**

**Bankruptcy No. 80–01101.**

United States Bankruptcy Court,
W. D. Oklahoma.

March 3, 1981.

Eugene H. Matthews, Oklahoma City, Okl., for Local No. 644, United Food and Commercial Workers AFL–CIO.

Robert E. Funk, Jr., Washington, D.C., for United Food and Commercial Workers Intern. Union and Intern. Food and Commercial Workers Intern. Union Dist. Local No. 644.

John Preefer, New York City, for United Food and Commercial Workers Intern. Union AFL–CIO/CLC Dist. Local 644.

## MEMORANDUM OPINION

### STATEMENT

ROBERT L. BERRY, Bankruptcy Judge.

This matter came on for hearing, after required notice, upon the Trustee's Application For Injunctive Relief against the Amalgamated Meat Cutters and Butcher Workmen of America, AFL–CIO, hereinafter called the Union, and the National Labor Relations Board, hereinafter called the NLRB. The Trustee seeks to enjoin both the Union and the NLRB from proceeding in certain actions now pending before the NLRB and requests these matters to be adjudicated in the bankruptcy court.

### FACTS

On June 7, 1980, an involuntary petition in bankruptcy was filed against the Unit Parts Company, the debtor herein, pursuant to which an order for relief was entered by this Court on July 7, 1980. On July 10, 1980, and July 17, 1980, respectively, the Union filed original and amended charges against the debtor with the NLRB. Pursuant to the Union's charges the NLRB issued a complaint which alleged certain unfair labor practices had been committed by the debtor, beginning with the debtor's having unilaterally terminated all bargaining unit employees on layoff status on June 17, 1980.

Thus far in this case, approximately five hundred and seventy-nine (579) employee wage claims have been filed by individuals, approximately five hundred and forty-three (543) of which contained Powers of Attorney granted by the claimant in favor of the

Murray Cohen, Oklahoma City, Okl., Trustee, pro se.

Peter T. Van Dyke, Oklahoma City, Okl., for debtor Unit Parts Co.

Margaret McMorrow-Love and John Heatly, Oklahoma City, Okl., for Fellers, Snider, Blankenship, Bailey and Tippens.

Louis J. Price, Oklahoma City, Okl., for The Bank of America.

Gerald E. Durbin, II, Oklahoma City, Okl., for GKD Advertising.

G. Blaine Schwabe, III, Oklahoma City, Okl., for Borg-Warner Corp. and Borg-Warner Leasing Division of Borg-Warner Acceptance Co.

Sara M. Green, Washington, D.C., for N. L. R. B.

Kathleen Aure, Fort Worth, Tex., for Region 16, N. L. R. B.

Joseph M. Jacobs, Chicago, Ill., special appearance for Robert Funk and the United Food and Commercial Workers Union.

Union. These Powers of Attorney authorized Mr. Joe R. Chicoine, Secretary-Treasurer of the Union, as attorney in fact for the claimant, "with full power of substitution, [if appropriate] to vote for a trustee of the estate of the debtor and for a committee of creditors; to receive dividends; and in general to perform any act not constituting the practice of law for the [claimant] in all matters arising in this case."

In addition to these individual claims, the Union has filed a claim on behalf of approximately one hundred and six (106) employees. The NLRB has also filed a Proof of Claim based on the allegations of unfair labor practices in an amount "believed to be in excess of three hundred and forty-five thousand dollars ($345,000.00)".

On January 22, 1981, the Trustee filed an Application For Injunctive Relief seeking to restrain both the Union and the NLRB from proceeding before the NLRB and to have these claims adjudicated in the bankruptcy court.

### LAW

In opposition to the Trustee's Application, the NLRB relies heavily on the case of *Nathanson v. N.L.R.B.*, 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23 (1952). In that case, a trustee in bankruptcy urged that employee claims for back pay should have been liquidated in the Bankruptcy Court as opposed to proceedings before the NLRB. In considering this question, the Court said:

"The trustee claims that the liquidation of the back pay award should not have been referred to the Board. Section 10(c) of the National Labor Relations Act, 29 U.S.C. § 160(c) authorizes the Board, once an unfair labor practice has been found, to require, inter alia, the person who committed it to 'take such affirmative action, including reinstatement of employees with or without back pay, as will effectuate the policies of this Act.' The fixing of the back pay is one of the functions confided solely to the Board.... Congress made the relation of remedy to policy an administrative matter, subject to limited judicial review, and chose the Board as its agent for the purpose.

"The bankruptcy court normally supervises the liquidation of claims. See *Gardner v. New Jersey*, 329 U.S. 565, 573, 67 S.Ct. 467, 471, 91 L.Ed. 504, 514. But the rule is not inexorable. A sound discretion may indicate that a particular controversy should be remitted to another tribunal for litigation. See *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 483, 60 S.Ct. 628, 630, 84 L.Ed. 876, 880. And where the matter in controversy has been entrusted by Congress to an administrative agency, the bankruptcy court normally should stay its hand pending an administrative decision.... It is the Board, not the referee in bankruptcy nor the court, that has been entrusted by Congress with authority to determine what measures will remedy the unfair labor practices. We think wise administration therefore demands that the bankruptcy court accommodate itself to the administrative process and refer to the Board the liquidation of the claim, giving the Board a reasonable time for its administrative determination."

The Supreme Court's ruling in *Nathanson* was entirely based on the proposition that "the Board, not the referee in bankruptcy nor the court ... [had] been entrusted by Congress with authority to determine what measures will remedy ... unfair labor practices." Other cases relied on by the NLRB as to this issue are based on the *Nathanson* decision or reflect similar reasoning.

On November 6, 1978, however, Congress enacted new bankruptcy legislation which had a tremendous impact on the jurisdiction of bankruptcy courts. Section 241(a) of Title 11 of the Bankruptcy Reform Act of 1978 amended Title 28 of the United States Code by inclusion of the following new Section 1471:

"(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

"(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction

on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

"(c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

"(d) Subsection (b) or (c) of this section does not prevent a district court or a bankruptcy court, in the interest of justice, from abstaining from a particular proceeding arising under title 11 or arising in or related to a case under title 11. Such abstention, or a decision not to abstain, is not reviewable by appeal or otherwise."

\*     \*     \*     \*     \*     \*

The congressional intent of section 1471 is clarified and fully spelled out in the following statement of the House Committee on the Judiciary found in House Report No. 95–595, 95th Cong., 1st Sess. (1977), p. 445, U.S.Code Cong. & Admin.News 1978, 5787, 6400:

"Subsection (a) of this section gives the proposed bankruptcy courts original and exclusive jurisdiction of all cases under title 11. The jurisdiction granted under this provision is of the whole bankruptcy case. Subsection (b) governs jurisdiction of proceedings in the case. This subsection dictates that all bankruptcy cases are commenced in the United States Bankruptcy Courts.

"Subsection (b) is a significant change from current law. It grants the bankruptcy court original (trial), but not exclusive, jurisdiction of all civil proceedings arising under title 11 or arising under or related to cases under title 11. This is the broadest grant of jurisdiction to dispose of proceedings that arise in bankruptcy cases or under the bankruptcy code. Actions that formerly had to be tried in State court or in Federal district court, at great cost and delay to the estate, may now be tried in the bankruptcy

courts. The idea of possession or consent as the sole bases for jurisdiction is eliminated. The bankruptcy court is given in personam jurisdiction as well as in rem jurisdiction to handle everything that arises in a bankruptcy case.

"The jurisdiction granted is of all proceedings arising under title 11 or arising under or related to a case under title 11. The bill uses the term 'proceeding' instead of the current 'matters and proceedings' found in the Bankruptcy Act and Rules. The change is intended to conform the terminology of title 28, under which anything that occurs within a case is a proceeding. Thus, proceeding here is used in its broadest sense, and would encompass what are now called contested matters, adversary proceedings, and plenary actions under the current bankruptcy law. It also includes any disputes related to administrative matters in a bankruptcy case.

"The use of the term 'proceeding,' though, is not intended to confine the bankruptcy case. Very often, issues will arise after the case is closed, such as over the validity of a purported reaffirmation agreement, proposed 11 U.S.C. 524(b), the existence of prohibited postbankruptcy discrimination, proposed 11 U.S.C. 525, the validity of securities issued under a reorganization Plan, and so on. The bankruptcy courts will be able to hear these proceedings because they arise under title 11.

"The phrase 'arising under' has a well defined and broad meaning in the jurisdictional context. By a grant of jurisdiction over all proceedings arising under title 11, the bankruptcy courts will be able to hear any matter under which a claim is made under a provision of title 11. For example, a claim of exemptions under 11 U.S.C. 522 would be cognizable by the bankruptcy court, as would a claim of discrimination in violation of 11 U.S.C. 525. Any action by the trustee under an avoiding power would be a proceeding arising under title 11, because the trustee would be claiming based on a right given

by one of the sections in subchapter III of chapter 5 of title 11. Many of these claims would also be claims arising under or related to a case under title 11. Indeed, because title 11, the bankruptcy code, only applies once a bankruptcy case is commenced, any proceeding arising under title 11 will be in some way 'related to' a case under title 11. In sum, the combination of the three bases for jurisdiction, 'arising under title 11,' 'arising under a case under title 11,' and 'related to a case under title 11,' will leave no doubt as to the scope of the bankruptcy court's jurisdiction over disputes.

"Examples of matters that the bankruptcy court will be able to hear include all items listed by the Bankruptcy Commission in its proposed Bill H.R.31, 94th Cong., 1st Sess. §§ 2–201(a), 2–201(b) (1975), or the equivalents to those items under title 11 as proposed by H.R.8200, as well as all items that the bankruptcy courts are now able to bear [sic] under Bankruptcy Act § 2a(2A).

"Subsection (c) [now (d)] permits the bankruptcy court, in the interest, of Justice, to abstain from hearing a particular proceeding arising under title 11 or arising under or related to a case under title 11, and makes the abstention, or a decision not to abstain unreviewable. The subsection recognizes the exigencies that arise in such cases as *Thompson v. Magnolia Petroleum*, 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940), in which it is more appropriate to have a State court hear a particular matter of State law. The bankruptcy courts will not abstain, however, when no other court, Federal, State or local, has jurisdiction over the proceeding in question. This clearly would not be in the interest of justice.

The question posed by the instant case is whether the enactment of 28 U.S.C. § 1471 now gives the bankruptcy court jurisdiction to hear labor disputes arising in or related to a bankruptcy case where such disputes were formerly under the exclusive jurisdiction of the NLRB. The answer to this question must be considered more in light of Congress' declaration of intent in House Report 95–595 than with respect to prior case law based on the old Bankruptcy Act.

The House Report makes three important points germane to the issue herein. First, the report flatly states that § 1471 is "a significant change from current law." Second, the report makes clear that the "bankruptcy court is given ... jurisdiction to handle everything that arises in a bankruptcy case." Third, the report specifically points out that "the bankruptcy courts will be able to hear any matter under which a claim is made under a provision of title 11."

■ In the instant case, the NLRB has filed an unliquidated claim based on alleged unfair labor practices commencing between the time the involuntary petition in bankruptcy was filed and the time the order for relief was entered. Under 11 U.S.C. §§ 502(f) and 507(a)(2) such a claim, if liquidated and allowed, may have priority directly behind administrative expenses. A fair and speedy determination of such a high priority claim is an absolute necessity in this reorganization case, and, as made clear in the House Report, the bankruptcy court is a proper forum within which to make such a determination.

■ Section 1471(b) gives the bankruptcy court "original [trial] but not exclusive jurisdiction" over such matters "[n]otwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts". The bankruptcy court's jurisdiction over the liquidation of the unfair labor practice claim is thus concurrent with that of the NLRB.

■ Section 1471(d) further provides that where the bankruptcy court's jurisdiction is concurrent, the bankruptcy court may abstain "from a particular proceeding ... arising in or related to a case under title 11", and that "[s]uch abstention, or a decision not to abstain, is not reviewable by appeal or otherwise." In this case the bankruptcy court elects not to abstain and will therefore assert jurisdiction over all proceedings involving the NLRB's claim.

The only case under the Bankruptcy Reform Act of 1978 which has considered this issue is that of *In Re Seeburg Corp.*, 5 B.R. 364 (Bkrtcy.N.D.Ill.1980). In that case, the bankruptcy Judge asserted jurisdiction over the liquidation of a claim by the NLRB and issued an injunction against further proceedings before the NLRB. The bankruptcy Judge based his decision on 28 U.S.C. § 1471 but also relied on certain language contained in the case of *In Re Shippers Interstate Service, Inc.*, 618 F.2d 9 (7th Cir. 1980) which stated that a bankruptcy court could enjoin proceedings before the NLRB "where a proper showing was made that the regulatory proceedings threatened the estate assets or that the bankruptcy or other proceedings would result in the liquidation of the company."

The bankruptcy court's decision in *Seeburg*, supra, was subsequently reversed by the district court in *Seeburg Corp. v. NLRB*, 5 B.R. 364 (Bkrtcy.N.D.Ill.1980). The basis for the district court's reversal was that the bankruptcy court had already approved a reorganization plan which included a provision setting aside the full potential NLRB claim. The district court reasoned that since a provision for the NLRB claim had been made in the plan, no estate assets could be threatened by NLRB proceedings as set forth in *Shippers*, supra.

This Court believes the *Shippers* case to be no longer applicable to proceedings such as being considered here. *Shippers* was decided under the old Bankruptcy Act and has been clearly superceded by 28 U.S.C. § 1471 and the Congressional intent behind it as expressed in House Report 95–595. Nowhere, in either of the *Seeburg* cases, can this Court find where the previously quoted section of the House Report was ever considered by the bankruptcy court or the district court. In any event, since neither the Supreme Court, our own Court of Appeals, nor our District Court has ruled on the effects of 28 U.S.C. § 1471, this Court is free to adopt that interpretation which it feels Congress intended.

It may also be argued that since, under 28 U.S.C. § 1478, Congress denied the ability to remove a "civil action by a Government unit to enforce such governmental unit's police or regulatory power" to a bankruptcy court, that section demonstrates a Congressional intent to limit the bankruptcy court's jurisdiction over such civil actions. We do not agree.

In the first instance, "removal" contemplates the transferring of an action from one forum to another. Such is not the case here. The NLRB has filed an unliquidated claim "believed to be in excess of three hundred and forty-five thousand dollars ($345,000.00)". As House Report 95–595 clearly states, under 28 U.S.C. § 1471, "bankruptcy courts will be able to hear any matter under which a claim is made under a provision of title 11." In electing not to abstain from liquidating the claim, this Court is not transferring an action from the NLRB, it is merely electing to hear an action which is already before it.

Secondly, and very significantly, the Congressional grant of concurrent jurisdiction over a particular type of action to both a court and an administrative board is not a new situation. Similar circumstances arose in the case of *Federal Trade Commission v. Cement Institute*, 333 U.S. 683, 68 S.Ct. 793, 92 L.Ed. 1010 (1948). In that case, an action was before the Federal Trade Commission which involved unfair methods of competition made unlawful by the Federal Trade Commission Act. While review of the Commission's order was pending, the Attorney General filed a civil action in the District Court based on the Sherman Act which outlawed combinations in restraint of trade and gave the district court exclusive jurisdiction over such actions. The defendants urged that the Commission proceedings should be dismissed because it was contrary to public interest to force them to defend both a Commission proceeding and a Sherman Act suit based largely on the same alleged misconduct.

In answer to this argument, the U. S. Supreme Court said:

" . . . the fact that the same conduct may constitute a violation of both acts in nowise requires us to dismiss this Com-

386

mission proceeding. Just as the Sherman Act itself permits the attorney general to bring simultaneous civil and criminal suits against a defendant based on the same misconduct, so the Sherman Act and the Trade Commission Act provide the Government with cumulative remedies against activity detrimental to competition. Both the legislative history of the Trade Commission Act and its specific language indicate a congressional purpose, not to confine each of these proceedings within narrow, mutually exclusive limits, but rather to permit the simultaneous use of both types of proceedings."

### CONCLUSION

For the foregoing reasons this Court concludes that its jurisdiction is concurrent with that of the NLRB as to the liquidation of the NLRB's claims. Further, this Court elects not to abstain from hearing all proceedings involving said claims under the jurisdictional grant of 28 U.S.C. § 1471, and therefore all matters concerning these claims will proceed in the bankruptcy court. This Court does not feel, however, that injunctive relief is proper at this time. An appropriate order has been issued in accordance herewith.