In re E. C. ERNST, INC., E. C. Ernst Midwest, Inc., E. C. Ernst International Corp., Debtors.

E. C. ERNST, INC., Debtor and Debtor in Possession

v.

ALRICH–ELECTRICAL CONTRACTING COMPANY, INC., and the Travelers Indemnity Company, Defendants.

Arrangement Nos. 79 B 2139–41.

United States Bankruptcy Court, S. D. New York.

June 4, 1982.

Shea & Gould, New York City, for plaintiff.

Wilson & Trotter, Augusta, Ga., for defendant Alrich Elec. Contracting Co.

## DECISION ON COMPLAINT TO VACATE DEFAULT JUDGMENT

EDWARD J. RYAN, Bankruptcy Judge.

On December 1, 1978, E. C. Ernst, Inc. ("Ernst") filed a petition instituting a Chapter XI case in accordance with Bankruptcy Rule 11–6 and it was thereafter continued in the operation and management of its business as debtor in possession.

On August 13, 1981, Ernst filed a summons and complaint against Alrich-Electrical Contracting Company, Inc. ("Alrich") and The Travelers Indemnity Company ("Travelers"), seeking: (1) to enjoin Alrich from continuing a certain action in Georgia,[1] (2) to declare the default judgment obtained against Ernst in the Georgia action void, and (3) to enjoin a certain District Court action,[2] all more fully described hereinafter.

On November 17, 1981 Ernst and Alrich entered into a joint stipulation of facts which contains the following information.

Prior to the filing of its petitions instituting this Chapter XI case, Ernst executed a joint venture agreement with Alrich-Electrical Contracting Company, Inc., for the purpose of entering into a $1,675,000 subcontract (the "Subcontract") with Bay-Con General, Inc., general contractor, involving the furnishing of labor, materials and equipment and the installation of certain electrical and construction work for the Horse Creek Pollution Control Facilities in South Carolina (the "Project").

The agreement and subsequent oral modifications allocated the responsibilities and net profits as follows: (a) Ernst was to provide the requisite material and bonding; (b) Alrich was to perform the job and provide the labor; and, (c) net profits were to be distributed forty-five percent to Ernst and fifty-five percent to Alrich.

Ernst placed purchase orders with various suppliers for approximately $650,000 of requisite material in the name of the joint venture and made material transfers of

---

1. The injunctive relief requested is not appropriate since the litigation sought to be enjoined has already proceeded to judgment.

2. Pursuant to an order of this Court, dated August 17, 1981, the claims of the joint venture against The Travelers Indemnity Company and Bay-Con which are the subject of an action in the United States District Court for Georgia were permitted to be settled in accordance with a general release and a settlement agreement, dated July 20, 1981, entered into by and between the joint venture and The Travelers Indemnity Company and Bay-Con. Therefore, the relief requested above is moot.

wire and conduit to Ernst-Alrich (joint venture) in the approximate amount of $230,000 prior to December 1, 1978, the date on which Ernst filed its Chapter XI petition. Ernst was fully paid by the joint venture for said material transfers in the approximate amount of $230,000. Some of the remaining purchase orders placed by Ernst for materials were rejected by the material suppliers to which said purchase orders were issued (the extent of which is unknown to Ernst) and all materials and working capital used by the joint venture subsequent to December 1, 1978 were acquired or furnished by Alrich. Alrich performed all work required by the Subcontract and provided all labor used in the performance of the Subcontract. The project was completed in August 1980.

It was an initial requirement that the electrical subcontractor furnish bonds to Bay-Con General, Inc., as obligee, which guaranteed the performance of the work by the electrical contractor and payment of all labor and materialmen of the electrical subcontractor. Subsequent to estimating the Project, Alrich discovered it could not furnish the aforementioned bonds. As above stated, one of Ernst's obligations under the agreement was to furnish requisite bonding. Bonds were issued by Ernst's surety, The Travelers Indemnity Company, in the amount of $1,675,000 naming Ernst-Alrich Electrical Contractors as principal. However, said bonds were subsequently returned to Travelers. Accordingly, the project was non-bonded.

Notwithstanding knowledge of the automatic stay,[3] on May 2, 1980, Alrich instituted a civil action against Ernst, debtor in possession, in the Superior Court for Richmond County, State of Georgia (the "Georgia Action") entitled *Alrich Electrical Contracting Company, Inc., plaintiff v. E. C. Ernst, Inc., defendant,* file no. 7477–C (the "Georgia Action") seeking a declaratory judgment that (i) Alrich is entitled to receive all proceeds derived from the performance of the Subcontract and (ii) terminating any and all of Ernst's rights under the agreement. Service of the summons and complaint was perfected on May 6, 1980 by serving Ernst at its job site office in Richmond County, Georgia.

Pursuant to a letter, dated May 20, 1980, from Philip R. Mann, a member of Shea & Gould, to Wilson & Trotter, Alrich's counsel, and filed with the clerk of the Georgia Court and previous telephone conversations between Wilson & Trotter and Ernst's General Counsel, Dean Haskell, Ernst confirmed the fact it had previously filed a petition instituting a Chapter XI case in the Southern District of New York and that commencement of the aforesaid action was in violation of the stay imposed by Chapter XI Rule 11–44 and any continuation thereof would result in a request being made to this court for appropriate relief.

On June 23, 1980, a default judgment was entered in the Georgia Court against Ernst, debtor in possession, since no responsive pleadings had been filed on behalf of Ernst. There has been no appeal by Ernst and the judgment has not otherwise been attacked in the courts of Georgia. Ernst cannot reopen the default judgment in Georgia.

Ernst was not informed about the entry of the default judgment and did not learn of its existence until nearly a year later. Due to attempts at settlement of this dispute by Ernst and Alrich, after Ernst's receiving knowledge of the default judgment, no request for appropriate relief from the Bankruptcy Court was made by Ernst until August 12, 1981. Said request resulted from a complete breakdown in settlement negotiations between Ernst and Alrich.

The sole issue now before this court is whether the default judgment entered against Ernst in the Georgia Action is void as a matter of law.

---

**3.** A petition filed under Bankruptcy Rule 11–6 or 11–7 shall operate as a stay of the commencement or the continuation of any court or other proceeding against the debtor or the enforcement of any judgment against him. See also, *B. Rule 11–44* and Section 314 of the Bankruptcy Act.

Alrich's action against Ernst, brought in the Georgia State Court, was instituted after Ernst had filed its Chapter XI petition. It is conceded in the parties' stipulation of facts that Alrich proceeded against Ernst notwithstanding its knowledge that Section 314 and Rule 11–44 of the Bankruptcy Act and Rules provide for an automatic stay of actions against a debtor.

■ The Georgia suit was brought against Ernst as a debtor in possession and the court rendered the default judgment against Ernst as such. Although the action referred to Ernst as a debtor in possession, the action was, in fact, a proceeding against Ernst as debtor.[4]

The distinction between debtor in possession and debtor is important because, under the Bankruptcy Act, all actions against a debtor are automatically stayed by the filing of the petition; whereas, actions against a debtor in possession may, under certain circumstances, proceed without leave of the bankruptcy court.

According to Alrich, the litigation in the Georgia State Court was brought against Ernst as debtor in possession pursuant to 28 U.S.C. § 959.[5] This statute provides, *inter alia,* that under certain circumstances a suit against a debtor in possession can proceed without consideration of the automatic stay. The Section 959 exception to the automatic stay concerns a suit against a debtor in possession in the operation of its business.

The Georgia action arose out of a pre-bankruptcy transaction between the parties and did not stem from the efforts of the debtor in possession to carry on its business. The "attempt to collect and liquidate assets of a debtor is not to carry on its business in any proper sense of the term." *Austrian v. Williams,* 216 F.2d 278, 285 (2d Cir. 1954), *cert. denied, Pasternak v. Austrian,* 348 U.S. 953, 75 S.Ct. 441, 99 L.Ed. 745 (1955). Thus, even if the Georgia State Court action had, in actuality, been directed against

Ernst as debtor in possession rather than Ernst as debtor, the transaction sued upon did not arise out of the efforts of the debtor in possession to carry on its business and, therefore, it would not qualify.

Alrich's action against Ernst was predicated on a pre-petition joint venture agreement between the parties. According to Alrich, the project was 18% completed at the time Ernst filed its petition. It is agreed that up until the date of its filing, Ernst had been performing its obligations under the joint venture agreement.

Subsequent to its filing, Ernst failed to fulfill its obligations under the agreement. Paragraph 12 of the Joint Venture Agreement provides for the rights and liabilities of each party in the event that either becomes insolvent. Pursuant to this paragraph, Ernst, upon filing for relief in bankruptcy court, ceased to have any voice in the management of the project. This section of the contract also provides that Ernst, as the insolvent party, remains liable for its share of any profits with respect to the project. Therefore, Ernst as debtor has an interest in that portion of the profits corresponding to its 18% performance of its obligation and that share of its liability for the entire project.

■ At the time that Ernst filed its petition in proceedings for an arrangement, the joint venture agreement constituted an executory contract.[6] In order for Alrich to maintain a suit against the debtor in possession, the latter would have had either to have assumed or rejected the executory contract with Alrich. Ernst, as debtor in possession, never assumed or rejected the executory contract, and Alrich never moved for the debtor in possession to do so. Since there was no assumption nor rejection of the executory contract, the agreement remained as between Alrich and Ernst as debtor.

---

4. The court rendered the default judgment against "Ernst as debtor in possession" since that is the manner in which Alrich referred to Ernst in its complaint.

5. 28 U.S.C. § 959(a). "Trustees, receivers or managers of any property, including debtors in

possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property ...."

6. Since the time of filing Alrich has voluntarily completed the agreement on its own.

Furthermore, since the debtor in possession received none of the benefits from the executory contract during its debtor in possession period, Ernst, as debtor in possession, did not expose itself to Section 959 consequences.

The main thrust of Section 70a(5) of the Bankruptcy Act is to secure for creditors everything of value the bankrupt may possess in alienable or leviable form when he files his petition. The term "property" has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed. *Segal v. Rochelle*, 382 U.S. 375, 379, 86 S.Ct. 511, 514–515, 15 L.Ed.2d 428 (1966).

As the joint venture agreement was one between Alrich and the debtor, a portion of the profits realized from the joint venture proportionate to Ernst's contribution to the project constitutes property of the debtor.

Ernst's property interest in a percentage of the profits arising out of its contributions to the joint venture brings such property of the debtor within the bankruptcy court's jurisdiction.

Since there was a property interest existing at the date of institution of the Chapter XI proceeding which gives the bankruptcy court jurisdiction and which makes Rule 11–44 applicable, Alrich's action against Ernst in the Georgia Court is void, having violated the automatic stay.

This court has exclusive jurisdiction over the debtor's property. It was incumbent on Alrich to seek this court's permission to proceed against Ernst in a state court to determine the debtor's rights with respect to Ernst's property interest in the joint venture. "[A] court of bankruptcy has exclusive and nondelegable control over the administration of an estate in its possession. But the proper exercise of that control may, where interests of the estate and the parties will best be served, lead the bankruptcy court to consent to submission to state courts of particular controversies . . ." however, only if the bankruptcy court first consents to the state court's jurisdiction. *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940).

In the instant case, Alrich proceeded against Ernst in the Georgia State Court without seeking the consent of this court and thereby intruded upon the bankruptcy court's exercise of its jurisdiction.

The action by Alrich was against the debtor and its property interest prior to the filing of its petition. Such an action was a clear violation of the automatic stay imposed on the filing in bankruptcy. Any subsequent action taken by Alrich in another court without the permission of the bankruptcy court is therefore void. Consequently, any judgment rendered against Ernst in a proceeding that violated the automatic stay and in a court that lacked jurisdiction is void as a matter of law.

Settle an appropriate order.