## In re FRIGITEMP CORP., Bankrupt.

**Lawson F. BERNSTEIN, Trustee in Bankruptcy of Frigitemp Corp., Plaintiff-Appellee,**

v.

**LITTON SYSTEMS, INC., d/b/a Ingalls Shipbuilding Division, Defendant-Appellant.**

No. 82 Civ. 3928 (GLG).

Bankruptcy No. 78 B 468(JL).

United States District Court, S.D. New York.

Nov. 5, 1982.

Gelberg & Abrams, New York City, and Scruggs & Williams, P.A., Pascagoula, Miss., for plaintiff-appellee; Marc S. Kirschner, Michael Luskin, New York City, and Richard F. Scruggs, Pascagoula, Miss., of counsel.

Latham, Watkins & Hills by Thomas L. Patten, Keck, Mahin & Cate by Robert L. Ackerly, Washington, D.C., Lans, Feinberg & Cohen by Malcolm I. Lewin, New York City, for defendant-appellant; William J. Powers, Jr., Pascagoula, Miss., of counsel.

## OPINION

GOETTEL, District Judge:

Litton Systems, Inc., ("Litton") appeals from an order of Bankruptcy Judge Joel Lewittes denying a motion to dismiss the amended complaint of the trustee of the estate of Frigitemp Corp. ("Frigitemp").[1] Litton contends that the bankruptcy court lacks summary jurisdiction over the underlying turnover proceeding brought by the trustee because the trustee has already relinquished the property which he seeks to have turned over.

The issue presented is somewhat novel. During the 1970's, Litton's Ingalls Shipbuilding Division ("Ingalls") in Pascagoula, Mississippi, was under contract to build a number of warships for the United States Navy. The now bankrupt Frigitemp was the subcontractor responsible for certain insulation and joiner[2] work, with subcontracts eventually totaling more than one hundred million dollars in value. Unfortunately, Frigitemp's financial condition deteriorated to such an extent that Litton found it necessary to agree to pay, subject to recoupment, whatever costs Frigitemp incurred after November 15, 1976. Despite Litton's assistance, by October 1977, Frigitemp was threatening to stop work on the subcontracts, thereby further jeopardizing the completion of the primary contracts.

Litigation between the parties ensued and originally led to a consent order that required Frigitemp to continue performance and reserved the respective right of both parties as to other issues. Nonetheless, on March 20, 1978, Frigitemp filed a petition in the bankruptcy court seeking an arrangement under Chapter XI, § 322 of the old Bankruptcy Act, 11 U.S.C. § 722 (1976). On May 28, 1979, Litton terminated Frigitemp's subcontracts for default, pursuant to the subcontracts' termination provisions. Litton transferred onto its payroll eight hundred Frigitemp employees and continued the joiner work in order to minimize the disruption of performance of the primary contracts. On the following day, May 29, 1979, Frigitemp was adjudicated bankrupt and the trustee was appointed and qualified.

On the day of bankruptcy, most of Frigitemp's capital tools and equipment ("equipment") were located in its assigned and leased areas of operation both within and adjacent to Litton's shipyard. Ownership of this equipment was greatly in dispute between three parties: some belonged to Frigitemp; some belonged to Litton because Litton had purchased it for Frigitemp pursuant to the modified subcontracts; and the rest arguably belonged to the United States pursuant to the terms of the primary contracts and the subcontracts. Regardless, of the ownership of each item of equipment, all of it was vital to the continuation of the primary contracts. Consequently, Litton resorted to what it now describes as "self help" to insure that it would have continued use of the equipment. On the date of bankruptcy, some of Litton's employees broke into Frigitemp's operational areas and began removing equipment. They continued the removal for several days. The trustee responded on June 1, 1979, by demanding that the equipment be returned. It never was.

Negotiations between the trustee and Litton began almost immediately. Two facts presented critical problems. First, the items of equipment were so commingled that it was virtually impossible to determine title to many of them. Second, Litton

---

1. The parties agree that, although this is an interlocutory appeal, it is an appropriate appeal under the rules of bankruptcy procedure. Bankr.Proc. Rule 801, 11 U.S.C. Appendix (1976).

2. A shipbuilding joiner fits and joins the interior furnishings to the hull of the ship. *See* Webster's Third New International Dictionary, Unabridged (1971).

needed even those that belonged to Frigitemp, while the bankrupt and non-operational Frigitemp had no immediate use for them. The agreement that was reached on June 14, 1979, reflected the parties' considerable efforts to accommodate these two factors, as well as others not here relevant. Almost two weeks of negotiations went into the agreement, the final draft of which was written by Litton but included the suggested changes of the trustee's local attorney.[3]

The language of that agreement holds the key to the resolution of the issues raised here on appeal. The critical language is contained in the fifth, sixth, and twelfth paragraphs of the agreement. In the fifth paragraph, the trustee expressly relinquished any claims to equipment for which Litton had actually paid or reimbursed Frigitemp's costs. In the sixth paragraph, the parties agreed to try for thirty working days to identify the title of each piece of equipment whose title was undetermined. Pending the completion of those thirty days, the trustee "expressly grant[ed] his permission" for Litton "to continue to use" the equipment. Also in the sixth paragraph, the parties further agreed that, if title to the equipment was not clarified within thirty days, each party would retain its rights and remedies for resolution of the issues of title and of compensation for the use of the equipment. Finally, in the twelfth paragraph of the agreement, the trustee strictly limited what he was conceding by including the following general provision: "Except as expressly stated herein, nothing herein contained nor any action taken hereunder by or on behalf of ... the Trustee shall constitute or be deemed to be a waiver or relinquishment of any claim or defense...."

The parties failed to resolve their differences regarding title, and, on October 1, 1980, the trustee commenced a turnover proceeding in the bankruptcy court to regain the equipment that he claimed belonged to Frigitemp. Initial cross-motions for summary judgment were denied on July 9, 1981, because the bankruptcy court found that summary disposition was precluded by the existence of several material issues of fact. Later, in February 1982, after the trustee had moved to dismiss some of Litton's affirmative defenses, the bankruptcy court *sua sponte* raised the question of jurisdiction that is now before this Court. Judge Lewittes wanted to know whether the terms of the June 14th agreement constituted a permanent relinquishment of possession by the trustee, which would have divested the bankruptcy court of summary jurisdiction. In response, Litton moved for a dismissal of the turnover proceedings for lack of jurisdiction. After both parties submitted memoranda of law and affidavits and orally argued this issue, the bankruptcy court on April 6, 1982, issued an order denying Litton's motion on the ground that the June 14th agreement contained no relinquishment of possession. Litton has appealed that decision.

The parties' initial dispute about the appropriate standard of review for this Court, while interesting, need not be resolved. Whether the interpretation of the June 14th agreement involves issues of fact[4] and requiring the strict standard of review of Bankr.Proc. Rule 810, 11 U.S.C. Appendix (1976), as the trustee argues, or it merely involves the application of law to a contract that is as available for scrutiny by this Court as it was for the bankruptcy court, as Litton argues, is not critical because the same result is obtained under either standard.

█ Turning to the merits, the Court first must note the parties' agreement that sections 2 and 23 of the old Bankruptcy Act,

---

3. The attorneys who negotiated the June 14th agreement apparently were not bankruptcy specialists.

4. Although the parties have indicated that the appendix on appeal contains everything presented to the bankruptcy court, reference has been made to a deposition of John J. Prin-

11 U.S.C. §§ 11 and 46 (repealed 1978),[5] generally limit the summary jurisdiction of a bankruptcy court to "matters relating to the administration of the bankrupt's estate, property in the court's constructive or actual possession, and other bankruptcy issues to which the parties expressly or impliedly consent." *See, e.g., In re Eastern Freight Ways, Inc.*, 577 F.2d 175, 182 (2d Cir.1978). In particular, in the absence of consent thereto, summary jurisdiction to adjudicate controversies depends upon whether the bankrupt had actual or constructive possession of the property claimed at the time of the filing of the petition in bankruptcy. *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 481, 60 S.Ct. 628, 629, 84 L.Ed. 876 (1940). Here, it is conceded that Frigitemp had possession of the equipment not only on the date it filed for bankruptcy but also on May 29, 1979, the date when it was adjudicated bankrupt.

■ Litton argues, however, that sixteen days later the trustee, by the terms of the June 14th agreement, relinquished legal possession. Both parties agree that the summary jurisdiction of a bankruptcy court is divested if and when the trustee, or debtor-in-possession, relinquishes the property at issue. *United Merchants & Mfrs., Inc. v. Union Bank*, 3 B.R. 286, 299 (Bkrtcy.S.D.N.Y.1980). The trustee here, however, convincingly distinguishes the facts upon which a relinquishment of possession was found in *United Merchants* from the facts in the instant case. There, an outright, voluntary, and permanent, though allegedly inadvertent, transfer was made without any reservation of possessory rights by the debtor-in-

possession. *Id.* at 297, 299. Here, in contrast, Litton seized the property, was later granted thirty working days to use it, and agreed that all other claims, rights, and remedies not expressly determined by the agreement remained undecided, and certainly not waived.

■ Although there is some economic sense to Litton's argument that neither party expected an actual return of Frigitemp's equipment, which Frigitemp would probably never be able to use again except to sell for scrap on the open market,[6] a failure to anticipate the actual return of property hardly constitutes the relinquishment of the right to have it returned within a set time. This is particularly true here, where the agreement, first, generally reserved all claims and defenses other than those expressly waived and, second, specifically reserved to "each" party the right to compensation for use of its equipment.[7]

Put succinctly, there was no change in legal possession from May 29th, when Frigitemp and the trustee actually possessed the equipment, until June 14th, when the agreement was approved by the bankruptcy court. Litton's seizure of the equipment in the interim certainly did not affect Frigitemp's right to possess the equipment. Nor does the agreement itself contain any language suggesting that the trustee relinquished legal possession. The agreement merely addressed an immediate situation, provided a means for dealing with certain, specific problems within a very limited period of time, and otherwise left for future resolution[8] all matters not settled by the

---

banic, III, that is not contained in the submissions. His affidavit, however, is included.

**5.** Because of its date of commencement, this case is governed by the provisions of the old Bankruptcy Act. *See* Bankruptcy Reform Act of 1978 § 403(a), Pub.L. No. 95–598, 92 Stat. 2683 (1978).

**6.** The primary contracts have long since been completed, and the equipment in question, we are told, now lies in Litton's yards rusting away.

**7.** The agreement specifies that "each" party, not just Litton, which is what Litton claims,

retained the right to compensation for the use of its property. This choice of terms is but one more indication that the agreement was not intended to foreclose the possibility of returning the equipment to Frigitemp if title remained undetermined at the end of the period of thirty working days and that Frigitemp's concession of temporary use to Litton was a *very limited grant*, certainly not a transfer of permanent or even indefinite legal possession.

**8.** Indeed, an action concerning title is pending now in the United States District Court for the Southern District of Mississippi. *Litton Systems, Inc. v. Frigitemp Corp.*, No. S–77–0372(N) (S.D.Miss.).

agreement or by the parties within the thirty-day period. Neither the exigencies of the situation nor the language of the agreement suggest any intent on the part of the trustee to relinquish possession. The Court must conclude, therefore, that the jurisdiction of the bankruptcy court continues.

Accordingly, the decision of the bankruptcy court is affirmed in all respects.

SO ORDERED.