MARYLAND NATIONAL INDUSTRIAL FINANCE CORPORATION, Plaintiff,

v.

GOLD DUST COAL COMPANY, Standard Labs Inc., J.R. Mining, Inc., Black Magic Mining Inc., and A.A.A. Paving and Excavating Inc., Defendants.

Bankruptcy No. 84 A 1016.

United States Bankruptcy Court, N.D. Illinois, E.D.

May 15, 1985.

James B. Gottlieb, Chicago, Ill., for plaintiff.

Harry S. Miller, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

FREDERICK J. HERTZ, Bankruptcy Judge.

### I.

This case comes to be heard on the motion of Gold Dust Coal, Standard Labs, J.R. Mining, Black Magic Mining and AAA Paving and Excavating (hereinafter collectively referred to as "adversary defendants") to dismiss or transfer the adversary complaint of Maryland National Industrial Finance Corporation (hereinafter "Maryland"). Maryland has filed a counter-motion, asking the court to strike adversary defendants' motion to dismiss on the basis of the alleged "bad faith dilatory conduct [sic] of defendants' counsel." Plaintiff's Motion to Strike, at p. 2. Finally, Maryland seeks authority to use funds, presently held in escrow, pending determination on the merits of this adversary proceeding. Since none of the parties to this adversary action is the debtor or debtor's representative, and for other reasons, a substantial question arises as to whether this court may, or should, entertain the complaint.

### II.

Maryland, an asset-based lending company, had loaned EEI Energy, Incorporated, ("hereinafter EEI") operating funds pursuant to an Inventory Loan and Security Agreement. In exchange for the loan and pursuant to the Agreement, EEI granted Maryland a security interest in all of its inventory and proceeds. Maryland filed a financing statement reflecting the agreement on February 3, 1982. The financing statement was filed with Kentucky's Secretary of State, in Frankfort, Kentucky.

Subsequently, EEI filed for protection under Chapter 11 of the Bankruptcy Code on February 18, 1983. On April 28, 1983, the case was converted to one under Chapter 7 of the Bankruptcy Code.[1] To date, approximately $300,000 purportedly remains owing to Maryland pursuant to the security agreement.

Glen Eagle, Inc., is a wholly-owned subsidiary of EEI. Glen Eagle is a tippling operation located in East Bernstadt, Kentucky. All five of the adversary defendants are creditors of Glen Eagle. None, however, has asserted a claim in the bankruptcy case.

Adversary defendants J.R. Mining, AAA, and Black Magic filed suit in Kentucky against Glen Eagle on February 1, 1983. It will be noted that this date is subsequent to the date on which EEI filed for protection under the federal bankruptcy laws. Presumably because of Glen Eagle's relation to EEI, the trustee of the estate of EEI and Maryland jointly filed a rule to show cause against the three creditors. The rule was resolved by agreement of the parties that certain Glen Eagle coal fines would be sold and approximately $40,000 in proceeds held in escrow at LaSalle National Bank. The funds continue in escrow pending determination of the relative rights of the parties.

In April of 1983, Gold Dust obtained a default judgment against Glen Eagle, in Kentucky, in the amount of $72,476.59.

---

1. During the bankruptcy proceedings, Maryland was tacitly recognized as the largest secured creditor of the EEI estate. *See e.g.,* Cash Collat-eral Order, entered in case No. 83 B 2389, on March 2, 1983.

Pursuant to this judgment, coal fines owned by Glen Eagle were sold for $58,-195.14. Maryland intervened in this suit, asserting its secured status, and consequently, the funds presently are being held in escrow at the Cumberland Valley National Bank in London, Kentucky.

On June 15, 1983, adversary defendant Standard Labs also obtained a default judgment against Glen Eagle in the amount of $4,471.28. Standard Labs attempted to levy against assets of Glen Eagle, but, on Maryland's motion, this court enjoined Standard from proceeding. Gold Dust was likewise temporarily enjoined on the basis that the actions were in violation of the automatic stay provision. The trustee did not join Maryland in this motion for rule.

Maryland's two motions for rule were supplanted by one adversary action brought by Maryland against all five Glen Eagle creditors. The EEI trustee is not a party to the adversary action and has taken no formal position with regard to it. Maryland asks the court to declare the rights of the parties and enjoin adversary defendants from pursuing their actions against Glen Eagle. It is Maryland's contention that Glen Eagle's assets are subject to the Maryland/EEI security agreement.

The adversary defendants have jointly filed a motion to dismiss or transfer on the basis of alleged jurisdictional infirmities. With reference to the provisions of the Bankruptcy Amendments and Federal Judgeship Act of 1984, the adversary defendants contend that this court has no jurisdiction because the case is based upon a state cause of action. In the alternative, the adversary defendants argue that this court must or should abstain in light of the debtor's non-involvement in the proceedings.

### III.

Of the three motions at issue in this proceeding, resolution of adversary defendants' motion to dismiss or transfer will be the dispositive one.[2] Adversary defendants correctly point out that Maryland's adversary complaint was filed subsequent to the enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984 (hereinafter "'84 Act"). Therefore, Maryland's assertion that this court has jurisdiction of its complaint pursuant to 28 U.S.C. 1471 and 1473 is in error. The '84 Act was effective on the date of its enactment; namely, July 10, 1984, and it provides in 28 U.S.C. 1334 the jurisdictional provisions which apply to this action.[3]

2. Maryland's motion to strike defendants' motion to dismiss, based on the alleged bad faith of adversary defendants' counsel, was premised on defendants' failure to timely file their memorandum in support. Since adversary defendants have subsequently filed their memorandum, the court will deny this motion.

Maryland's motion to pay proceeds to it during the pendency of the suit is also denied. The assertion that they, as an asset-based lending operation, could make more on the money than the banks which are presently holding the proceeds in escrow, is beside the point. Placing disputed funds in the hands of a neutral third party pending resolution of a lawsuit is unquestionably the proper method of protecting assets. Funds held in escrow are not to be used and possibly dissipated at the whim of the contenders. Furthermore, Maryland agreed that the funds should be held in escrow pending proceeding on the merits. Maryland shall not be heard to move contrary to its agreement at this time.

3. Section 1334 provides in relevant part:

1334. Bankruptcy cases and proceedings

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

(c)(I) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district

Pursuant to the grant of authority given him in 28 U.S.C. 157(a), the Chief District Court Judge for the Northern District of Illinois has issued a general order referring all bankruptcy cases to the bankruptcy courts. Section 157(b) [4] of title 28 of the United States Code delineates the proper scope of the bankruptcy courts' jurisdiction. Adversary defendants premise their motion to dismiss on the contention that Maryland's suit is a non-core proceeding, as that term is used in section 157, which does not affect the liquidation of the EEI estate.

Adversary defendants point to the fact that the debtor is not a party to these proceedings as proof of their contention. Maryland responds that their complaint is a core proceeding pursuant to 28 U.S.C. 157(b)(2)(A), (E), and (K), relating to administration of the estate, turnover orders, and priority of liens, respectively.

■ Maryland's reasoning is without merit, however, because Maryland confuses the assets of EEI with those of Glen Eagle.[5] Glen Eagle, as the totally-owned

4. Section 157(b) provides:

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interest for the purposes of confirming a plan under chapter 11 or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

court shall abstain from hearing such proceeding if an action is commenced and can be timely adjudicated, in a State forum of appropriate jurisdiction. Any decision to abstain made under this subsection is not reviewable by appeal or otherwise. This subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy.

(d) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of the estate.

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holderrelationship, except personal injury tort or wrongful death claims.

(3) The bankruptcy judge shall determine on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

(4) Non-core proceedings under section 157(b)(2)(B) of title 28, United States Code, shall not be subject to the mandatory abstention provisions of section 1334(c)(2).

(5) The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

5. In a similar vein, Maryland opposes the motion of adversary defendants to abstain on the grounds that pursuant to 28 U.S.C. § 1334(d), the bankruptcy court has *exclusive* jurisdiction over all property of the estate. Maryland contends that in light of this, the court cannot abstain because no other court would have jurisdiction. This argument is specious. Even assuming *arguendo* that the assets of Glen Eagle are part of the EEI estate, a bankruptcy court's

**292**

subsidiary of EEI is not, under these facts, part of the EEI estate. Glen Eagle apparently has not filed for bankruptcy. Furthermore, the trustee of the estate of EEI has stated on the record that, "Glen Eagle ... is not currently a part of the Bankruptcy Estate" and, "the trustee is not aware of any free and clear assets of Glen Eagle Coal Company and [therefore], no purpose would be served in making Glen Eagle ... a party to the EEI ... bankruptcy proceeding." Trustee's Application with Reference to Certain Assets of Glen Eagle Co., entered on the docket December 13, 1983, in case No. 83 B 02389. Therefore, *none of* the sections which Maryland cite confer core-proceeding jurisdiction on this court. It is fundamental that § 157(b)(2)(K) empowers the court to make "determinations of the validity, extent or priority of liens" *only upon property of the estate. In Re McKinney*, 45 B.R. 790, 12 C.B.C. 122 (Bankr.W.D.Ky.1985).

For this reason, it is incumbent upon this court to abstain from hearing this action pursuant to 28 U.S.C. § 1334(c)(1).[6] *In Re Dr. C. Huff Co., Inc.,* 44 B.R. 129 (Bankr. W.D.Ky.1984). The new jurisdictional provisions of the '84 Act limit the bankruptcy court's power to hear certain types of cases; particularly those based on the type struck down in the *Northern Pipeline* case—the state cause of action. *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). That is precisely the type of case presently before this court.

█ Maryland's dispute with the adversary defendants is not a case "under title 11" or one which "arises in a civil proceeding under title 11" or "arises in a case under title 11". Maryland's dispute is one "related to" a title 11 case, though tenuously at best. Maryland claims a security interest, by virtue of its financing statement, in assets and proceeds of assets owned by Glen Eagle. Adversary defendants are creditors of Glen Eagle, some with judgments in their favor, who maintain that Maryland's security interest is invalid because its financing statement was improperly filed.

Interpretation of a provision of the Kentucky version of the Uniform Commercial Code will control the outcome of the dispute. *Ky.Rev.Stats.* § 355.9–401. Section 355.9–401 dictates where a party must file its financing statement under Kentucky law. The determination turns on whether the debtor is a resident or non-resident. This particular provision of the statute is unique to Kentucky and the precise paragraph necessary to resolve this case has yet to be interpreted by the Kentucky courts. Treatise, Kentucky Secured Transactions, at 732–35. In the interests of comity alone,[7] this court would find it wise to abstain under these facts. *Accord Thompson v. Magnolia Petroleum Co.,* 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940) (unsettled questions of State law related to

---

jurisdiction over the property in question does not prevent it from abstaining where it appears that justice would be served thereby. *In Re Heslar,* 16 B.R. 329 (Bankr.W.D.Mich.1981).

**6.** Although adversary defendants suggest that this proceeding is subject to the mandatory abstention provision of § 1334(c)(2), the court cannot agree. In order for an action to be subject to the mandatory abstention provision, five requirements must be met: 1) there must be a timely motion; 2) the proceeding must be based upon State law; 3) the proceeding must be related to a case under title 11, but not arising under title 11 or arising in a case under title 11; 4) the proceeding must be one which could not have been brought in federal court absent the bankruptcy proceeding; and, 5) the suit must be one which is presently pending in a

State Court. The case *sub judice* does not meet the fourth requirement; i.e., Maryland could have brought its action in federal court on the basis of diversity jurisdiction. *Macon Prestressed Concrete Co. v. Duke,* 46 B.R. 727 (M.D. Ga.1985).

**7.** The fact that the outcome of this adversary proceeding will not directly affect the EEI estate supplies another, independent basis for abstention. *See Ghen v. Branca,* 45 B.R. 780, 12 B.C.D. 889 (1985). Maryland asserts that the administration of the EEI estate will be affected in that if Maryland reduces the debt owed it out of the assets of Glen Eagle, larger dividends in turn may be paid to EEI's other creditors. This indirect and speculative impact on the debtor's estate is not enough to provide a jurisdictional basis under the facts of this case.

## IV.

In sum, Maryland's motion to strike defendants' motion to pay proceeds to it are denied. Adversary defendants' motion to dismiss or transfer is granted to the extent that this court will exercise the discretion given it in 28 U.S.C. § 1334(c)(1) to abstain. The court does so on the basis that the proceeding is a state cause of action, resolution of which will not affect the EEI estate in any direct manner. Therefore, this court finds that it is in the interest of justice and comity that this court abstain from such proceeding.

Counsel for the adversary defendants is to draft an order in accordance with this opinion within five (5) days.

IT IS SO ORDERED.